[No. 4467.]

CRIPPEN, TRUSTEE, ET AL. v. THE X. Y. IRRIGATING DITCH COMPANY.

1.  **Water Rights—Adjudication of Priorities—Parties—Res Judicata.**

A party to a statutory proceeding to adjudicate priorities of water rights, who appears and files his claim of priority, even though he offers no proof in support of the claim he files, is concluded and bound by the provisions of the decree unless within the two years' period of limitation he applies for a review.   But one not a party to the proceeding may establish his priorities in a proper proceeding at any time within four years from the date of the decree.

2.  **Judgments—Void—Impeachment—Pleading — Meritorious Defense.**

A judgment rendered without obtaining jurisdiction of the

person may be impeached by a proceeding in equity for that purpose, or in an answer to an action seeking to enforce the judgment, although in the complaint or answer there is no allegation of merit.

**3.   Judgments—Void—Action to Set Aside—Parties.**

If a void judgment affects the rights of a stranger to the judgment or constitutes a cloud upon his title, he may maintain an action to have it canceled as to him.

**4.   Same—Water Rights.**

A void decree adjudicating priority of water rights may, at the suit of one having a later decreed priority, be set aside and its enforcement restrained as to all consumers of water having adjudicated priorities affected thereby.

*Appeal from the District Court of Bent County.*

Action to set aside a decree and enjoin its enforcement.

Our general assembly has furnished a comprehensive system for regulating the use of water for irrigation and established a procedure for settling the priority of rights to the use of water therefor. Session Laws 1879, 94; Session Laws 1881, 142. The X. Y. Irrigating Ditch Company, appellee here, proceeding under these acts by its petition filed in the district court of Bent county in the year 1893, set in motion the judicial machinery for adjudicating the relative priorities of all ditches and reservoirs taking water from the Arkansas river in water district No. 67. Such proceedings, thus instituted and conducted in obedience to the provisions of the statutes, resulted in a final decree in July, 1895, by which such priorities were determined, and, *inter alia,* appellee's canal was thereby awarded priority No. 11 for 69 cubic feet of water per second of time as of date July 22, 1889.

While the proceeding was pending, B. P. Knight, who was then the owner and in possession of Sisson Ditch No. 1, which is in that water district and takes

water from the Arkansas river, entered his appearance therein and filed a sworn statutory statement of claim for this ditch, in which it was alleged that its construction was begun December 20, 1889, or later, and a priority was claimed for it as of that date. Though Knight knew that the proceedings were continued for many months thereafter before the final decree was rendered, he offered no evidence to support his verified statement, and when the decree was entered no priority was awarded to his ditch.

Section 26 of the act of 1881 provides for a review or reargument of a decree thus entered within two years thereafter at the instance of a party thereto; by section 27 an appeal is granted to an aggrieved party upon prescribed conditions; section 34 gives to one not a party to the decree, at any time within four years after its entry, the right to bring and maintain any suit or action hitherto allowed in any court of competent jurisdiction to determine his claim or priority to the use of water, and section 35 declares that after the lapse of four years all parties whose rights are affected by any final decree shall be deemed and held to have acquiesced in the same.

No review or re-argument has ever been had of, and no appeal has ever been taken from, this decree, and no action has been instituted, within four years, or at all, by any one not a party to establish his priority. So that the decree, unless it has been affected by the proceedings which will presently be noticed, stands in all respects the same as when originally entered, and ever since that time water has been distributed thereunder to the appellee and others whose rights were thereby adjudicated.

In September, 1897, and more than two years after its entry, Crippen and others, appellants here, presented their petition to the district court in which this decree was entered, entitling the same as in the

original proceedings instituted by appellee, alleging that petitioners below, appellants here, were then the owners and in possession of Sisson Ditch No. 1, and that it was entitled to a priority of right to the use of water from the Arkansas river in this water district as of date December 20, 1889, by original construction. They asked leave to offer proofs of their claim and for an order of service to all persons claiming water from the river subsequent to the date of their alleged priority, naming the claimants of ditches whose rights were said to be inferior. An order was entered permitting appellants, as petitioners, to make the proofs requested, and notice was ordered to be issued to, and served upon, all subsequent claimants, returnable at a specified date. Pursuant to this order of the court, the appellants filed a sworn statement claiming the priority already mentioned.

Afterwards and before the return day of the writ, appellants filed a supplemental statement alleging upon information and belief that Sisson Ditch No. 1 was entitled to a priority of 16 cubic feet per second of time as of date January 1, 1876, for which a decree so determining was asked, regardless of any subsequent or prior appropriators, and without respect to the priority which appellants themselves had theretofore claimed as of date December 20, 1889. No new parties were brought into court, and no notice given to any claimants, or to any one who had decrees of date between January 1, 1876, and December 20, 1889, and no one appeared in opposition, and at no time in the proceedings were owners of ditches claiming priority of an earlier date than December 20, 1889, made parties or notified; nor was any relief asked as against them, except in the amended statement.

Upon the day of the filing of this supplemental

statement appellants offered proofs, and in November, 1897, obtained a decree for Sisson Ditch No. 1 awarding it a priority as of the date and quantity therein claimed, which antedated the priority awarded to the appellee in the final decree of 1895. This decree so entered purported to award to Sisson Ditch No. 1 the priority in question as paramount and superior to all priorities of the Arkansas river and its tributaries, except such as may have been, or may thereafter be, awarded, in a like adjudication by a competent tribunal, as of an earlier date.

A copy of this decree of 1897 was certified to the water commissioner of the district who was charged with the duty of regulating and distributing water in accordance with the provisions of the decrees of the district court. Although up to the time of the filing of the pending action there has been no actual interference with appellee's adjudicated rights, still, regardless of the priorities adjudicated to appellee and others by the decree of 1895, appellants will demand of the water commissioner that, in times of scarcity, he make distribution of water in accordance with the provisions of the decree of 1895, as modified by the decree of 1897. When there is a shortage of water, as is always the case at some period of the irrigation season, appellee's ditch will not get the full quantity decreed to it, because earlier appropriations will consume all the water of the river before it is served. If the water commissioner obeys the provisions of the decree of 1897, and makes distribution accordingly, appellee will be deprived of all, or some portion, of the quantity of water to which it is entitled under the decree of 1895; because, under the provisions of the statute governing the same, it is the duty of the water commissioner to distribute water to the various ditches in the district in accordance with their decreed priorities. When, therefore, there

is not enough for all, he shuts down the headgates of the various ditches in the inverse order of their numbered priority, so that a given priority will not be served until all senior ones receive their allotments.

It is charged that the decree of 1897 is wrong in that the court had no power to make it, and, since it was rendered without notice of any kind to the plaintiff, is entirely void. The relief asked is the annulling of the decree and the restraining of its enforcement. The proper water commissioner and the superintendent of irrigation and other state officials charged with the duty of enforcing the decree, were made parties. After a motion interposed by appellants, who were defendants below, had been overruled, and their demurrer to the complaint on the ground that it did not state facts sufficient to constitute a cause of action had likewise been overruled, the court, after the announcement by defendants that they stood upon the demurrer, upon the confessed allegations of the complaint reciting the foregoing facts, set aside the judgment and enjoined its enforcement, and from such decree the defendants are here by appeal.

Messrs. HODGES, WILSON & HODGES, for appellants.

Messrs. DEVINE & DUBBS, for appellee.

Mr. JUSTICE CAMPBELL delivered the opinion of the court.

By here summarizing the respective contentions of the parties, the questions for decision will be clearly presented at the outset.

1. The first position of plaintiff is that the statutory decree of 1895 is binding on the owners of the Sisson Ditch, and cannot be legally reviewed or over-

turned by them after the lapse of two years from
its entry; *second,* that the 1897 decree is void and
may be canceled, and its enforcement enjoined by
the plaintiff, because its execution would injuri-
ously affect plaintiff's vested rights.   The defend-
ants take the opposite view and further say that
under the irrigation statutes an application for
adjudicating such priority may be made by ap-
pellants and granted by the court without limita-
tion as to time.   They admit that the decree of
1897 is void as to the owners of the X. Y. canal, but
say that plaintiff, not being a party to it, cannot move
to set it aside, and, in any event, in the absence of
an allegation in the complaint that the Sisson pri-
ority was not, in truth and fact, as of date January
1, 1876, the plaintiff cannot maintain an action to
have annulled the decree which so determines.

Several questions are thus presented for deci-
sion, the first and most important of which is whether
a ditch owner who appears in a statutory proceeding,
properly brought and conducted under the so-called
irrigation statutes for settling water-right priorities,
and files his verified claim of priority and then
refuses to offer proof in support thereof, but permits
more than two years to expire after the entry of the
final decree, may, in a new statutory proceeding under
said acts, or by an action in the appropriate district
court, be heard to assert a priority inconsistent with,
or antagonistic to, the water priorities determined in
such former statutory adjudication.   The appellants'
first proposition is that, though their grantor was
notified of, and appeared in, the statutory proceed-
ing which culminated in the decree of 1895, yet as
he declined to offer proofs, and there was no pro-
vision of the decree purporting to ascertain or deter-
mine what his actual priority was, they, his grantees,
are at liberty at any time to initiate a new proceeding

under the irrigation statutes, and have their priorities determined, even though its effect be to overturn the priorities of the earlier decree. They say that section 22 of the act of 1881 (Mills' Ann. Stats., sec. 2421), is authority for this contention. It provides, in substance, that no claim of priority of any person who has failed or refused to offer evidence under any adjudication shall be regarded by any water commissioner in distributing water in times of scarcity, until such time as such party shall have, by application to the court having jurisdiction, obtained leave and made proof and secured a decree of the priority of right to which such ditch shall be justly entitled, which leave shall be granted in all cases upon such terms as to notice to other parties interested on payment of costs and upon affidavits or petitions sworn to, showing the rights claimed.

We cannot give the provisions of this section the unlimited scope claimed for it. The failure or refusal to offer evidence referred to therein may be by a party who has appeared in the proceeding and might have established his priority, or it may be because, not having been notified, and not appearing, no opportunity was given him to sustain his claim. If the failure or refusal was of the first kind, then under section 26 of the act (Mills' Ann. Stats., sec. 2425) the party may have a re-argument or review of the decree, with or without additional evidence, if he applies for it at any time within two years from the entering of the decree. That section, however, provides that if the request therefor is not made within such period, no such review or re-argument can be had. It thus seems clear that one who is a party to a statutory adjudication who appears in the proceeding and files his verified statement of claim but refuses to offer proof, cannot be heard thereafter to object, unless within the statutory period of two

years he applies for a re-argument or a review. This limitation of the right of a party to a review is exclusive, and if he neglects to avail himself of it, his right is gone. If the refusal or failure is of the other character, the person has the right under section 34 of the act (Mills' Ann. Stats., sec. 2434), at any time within four years after the decree is rendered, to establish his priority by an appropriate suit or action that was allowed in any court having jurisdiction before the passage of these special statutes. The provisions of the statutes should be construed together, and while the language of section 22 (Mills' Ann. Stats., sec. 2421), taken by itself, might seem to give to a person who appears and files his statement, but fails or refuses to offer evidence in its support, the right to come into the appropriate court to make proof of a priority at any subsequent time; yet, taken in connection with other sections relating to limitations upon further action, the reasonable construction is that he must make application for relief within two years. If not appearing, or not notified—in other words, if one is not a party—he may establish his priority at any time within four years in an appropriate action. The section still applies to priorities of a date later than the lowest one fixed by former decrees.

The definition which appellants place upon "party" is entirely too narrow. They would limit it to one who has notice of the proceeding and appears therein and offers proof and gets a decree. But one is a party to these proceedings who has due notice thereof, or who appears therein, or files his statement of claim; and the fact that he does not see fit to offer proof in support thereof, or fails to have his rights adjudicated, makes him as much a party to the proceeding as though he offered proofs and obtained a decree for his claimed priority.

Appellants cite in support of their contention a well considered Wyoming case—*Farm Investment Co. v. Carpenter et al.,* 9 Wyo. 110. A number of important questions are there considered and determined, and among other things the court, speaking by Potter, C. J., held that on the ground alone that while several priorities were established, no amount of water was awarded to a particular existing claimant who did not participate in the proceeding by appearance, submission of proofs, or otherwise—it was unable to say that the decree of the board under consideration was *res judicata* as to him and his rights. That, however, is not the case we are considering. Here appellants' grantor appeared in this proceeding and filed a verified claim, though no evidence in support of it was offered. The Wyoming court was careful to say that the scope of its decision was confined to the facts shown by the pleadings in the pending case, which was whether an adjudication of the board of control of that state which allots no water to an existing non-appearing and non-participating claimant amounts to a determination and disposition of his rights. We observe first that that opinion clearly shows that the scope and effect of the statutory proceedings for regulating the use of water in that state and for settling the priorities of water rights are in many important respects essentially different from those which are in force in Colorado. The statutes of Wyoming on this subject in force before the adoption of its constitution were very similar to the present law of this state, but after the adoption of that instrument an entirely different system was established. The settlement of priorities in that state is made by a state board of control, while in this state it is by the district courts. The proceeding before the board is instituted by the board itself in an official capacity representing the public, and, as stated

by Potter, C. J., it is "for the purpose of ascertaining the precise rights and priority of each appropriator, to the end that the public records may be furnished an accurate and defined statement thereof, and as an aid to adequate and effective state control of the public waters." In Colorado the object is to determine the relative rights and priorities as between different ditches, and in terms the priorities are awarded to these instrumentalities for enjoying the rights, and the adjudication is made by a constitutional judicial tribunal. In the Wyoming case it was said that a determination of the rights and priorities of several claimants does not necessarily involve the denial of all rights and claims of every other person not mentioned, but the court immediately said that if the proceeding was one wherein the parties represented in the decree were seeking to quiet their respective titles as against every other person, the result might be altogether different.

It is manifest from a careful examination of our statutes and from the repeated decisions of our courts that our proceeding, if not technically one to quiet titles, is quite analogous thereto, for the object is not merely to settle the individual and several priorities of the different appropriators, but the relative priorities as between the different ditches, in which every claimant is seeking to establish his right as against every other person. There are other substantial differences between the proceedings under the two systems, but enough has already been indicated to show that a decision under the Wyoming statute, even if it should go to the extent of holding that proceedings therein are not *res judicata* as to the parties thereto, would not be in point with us.

The court in the Wyoming case further observed that the determination required to be made by the board of control was primarily administrative rather

than judicial, and while it acts judicially, its power is *quasi* judicial only, and its jurisdiction was upheld in part because by other provisions of the act a review of its decision by the courts of the state is allowed, and because *quasi* judicial functions of the board were authorized by the provisions of the Wyoming constitution. The reasoning of the Wyoming case is authority for the doctrine, which we now lay down, that where a claimant of a priority to the use of water for irrigation appears in a statutory proceeding for the adjudication of such priorities and files a statement of his claim, the decree thereunder is *res judicata* as to him and his rights, though he neglects to offer proofs; and unless within the statutory period of two years he applies for a review, he may not thereafter, in any proceeding or action, be heard to object to the same. We do not see why the familiar rule, applicable to judgments in civil actions, does not apply to a final decree in these special proceedings, viz.: that whatever has been, or with propriety might have been, decided thereby, is *res judicata* as to the parties thereto and their privies.

This conclusion, while not expressly ruled by any of our previous decisions, is in principle supported by them. In *Greer v. Heiser,* 16 Colo. 306, the court said that it was a grave question whether an adjudication under these irrigation statutes could be had modifying the general decree regulating the distribution of water in the entire water district. But where no interests are involved or affected, save those of persons who are parties to such subsequent adjudication, under section 34 (Mills' Ann. Stats., sec. 2434) they were permitted, within four years from the entry of the decree, to have their rights judicially ascertained, though notified of the former proceeding but suffering default. The court, however, clearly intimated that were it not for the four years' statute

permitting one to maintain the action, the statutory decree would be *res judicata* as to him. The effect of this decision, so far as concerns the right to an independent action of a person who appears in the statutory proceeding or is notified thereof, is modified by the subsequent case of *Montrose Canal Co. v. Loutsenhizer Co.*, 23 Colo. 233, which will be further referred to.

In *Nichols v. McIntosh*, 19 Colo. 22, it was held that a person who, at the time of the statutory proceedings for ascertaining priorities, was absent from the state and not served with process, and did not enter an appearance therein, might thereafter have his rights judicially determined. The reasoning of the opinion proceeded upon the ground that the limitations of the statute do not apply to one who has not had his day in court, and logically makes the statutory decree *res judicata* as to an unproven claim of one who appeared in the proceeding.

In *Louden Co. v. Handy Co.*, 22 Colo. 102, it was held that the statutory proceeding was in the nature of a proceeding *in rem* for the settlement of all claims to priority within the particular water district, and a decree therein was *res judicata* at least as to all who appeared as parties thereto and participated in the proceedings. In *Boulder Co. v. Lower Boulder Co.*, 22 Colo. 115, the same announcement was made. In the Loutsenhizer case, *supra*, and in *Handy D. Co. v. South Side D. Co.*, 26 Colo. 333, a construction was placed on the four-year statute of limitations excluding from its operation parties to the statutory proceeding. It was there said that parties have an opportunity for re-argument or review within two years, and that the four years' statute was for the benefit of persons who were not parties to the statutory adjudication, or whose rights grow out of matters arising subsequent to the decree.

So that from these decisions upon the statutes it seems clear that a party to the statutory proceeding, even though he offers no proof in support of the claim which he files, is bound by the provisions of the decree unless within the two years' period of limitation he applies for a review. What the effect of such decree is as to one who has no notice whatever, or who did not appear, is not in this case, and we limit the decision to the facts of the pending case.

2.   It is contended by plaintiff and conceded by defendants that the decree of 1897, establishing for the Sisson Ditch No. 1 a priority as of date January 1, 1876, is absolutely void as to the plaintiff. But it is said by defendants that the complaint is insufficient because it does not show any merits in behalf of the plaintiff, in that there is no averment that the decree of priority of the Sisson Ditch was not, and is not, in reality as decreed. This argument is based upon the familiar rule, announced in many decisions, that a court of equity at the instance of the judgment debtor will not relieve against a judgment at law in the absence of an allegation of a meritorious defense thereto by him. Whatever the rule may be in other jurisdictions, the doctrine here, as announced in *Wilson v. Hawthorne,* 14 Colo. 530, is that a judgment rendered without obtaining jurisdiction of the person may be impeached by a proceeding in equity, or in an answer to an action seeking to enforce the judgment where equitable defenses are allowable as in this state, although in the complaint there is no allegation of merits. The court said: "The cross-complaint in this action contains no allegation that the defendant Henry Wilson was not liable in the original action equally with the defendant David R. Had the demurrer been specially interposed and sustained for the want of such averment, the ruling would not have been erroneous. The jurisdiction of equity

should not be invoked except by a complaint alleging that real injustice has been or is likely to be done. But we are not prepared to say that such averment is essential or traversable. The showing of merits should not be required to the extent of compelling a party against whom a judgment has been obtained, without jurisdiction over his person, to come into a court of equity and assume the burden of disproving his liability." It was further said that while the court may require an allegation of merits as an earnest of good faith from the party seeking relief from a judgment void for want of jurisdiction of the person of the judgment debtor, still, even if made, the allegation is not traversable, and the complaint is good without it. To the same effect, also, are—*Great West M. Co. v. Woodmass, etc., Co.*, 12 Colo. 46, 60; *DuBois v. Clark*, 12 Colo. App. 220; *Smith v. Morrill*, 12 Colo. App. 233; *Keely v. East Side I. Co.*, 16 Colo. App. 365; High on Injunctions (2 ed.), §§ 229, 230.

If a judgment debtor, in such circumstances, is not required to allege and prove merits, *a fortiori* should a stranger be exempt from doing so. But it is said that a stranger cannot maintain an action to cancel a void judgment, for so long as the parties themselves elect to have it stand, he has no right to set it aside. Unquestionably, the general rule is that a stranger may not maintain the action. But where the enforcement violates his rights, the stranger is affected by the judgment, and may be relieved against it. See authorities collected in 15 Enc. Pl. & Pr. 250. So, also, if the void judgment constitutes a cloud upon the title of a stranger, the latter may have it canceled as to him—17 Am. & Eng. Enc. Law (2 ed.) 847, note 1; 839, note 4. That plaintiff here certainly would be seriously injured by the enforcement of the decree of 1897 becomes apparent from

the consideration which we now give to another of defendants' contentions.

They say, even though the judgment is void as to the plaintiff, the decree complained of went too far in absolutely nullifying and setting it aside as to other parties to the statutory adjudication proceedings who are not here complaining of it. Ordinarily the criticism would be good, but when the relative rights of those holding statutory decrees are considered, the objection vanishes. A certified copy of the statutory decree is produced to the water commissioner, and in distributing water in times of scarcity he is required to observe the decreed priorities, distributing the same in accordance with the respective priorities, to the earliest one first, and so on in succession. It appears from the allegations of the complaint that in times of scarcity of water in the Arkansas river in this district, the plaintiff does not get the quantity of water decreed to it because earlier priority holders consume the same before its priority is reached. The defendants' decree of 1897 awarded them a priority as of January 1, 1876, antedating all of the priorities which were made by the previous decree of 1895. If the provisions of the later decree are enforced in times of scarcity, necessarily the headgate of plaintiff's canal would be shut down before those holding priorities of an earlier date were closed. So, in order fully to protect plaintiff in the enjoyment of its decreed rights against this void decree, it was necessary to restrain its enforcement against all of the consumers. These relative priorities are so interlaced and dependent one upon the other, and the distribution of water by the officers of the state is so made, that no practical decree can be rendered by the court in the pending case except one setting aside and annulling the void decree, and preventing

its enforcement, as against all those whose priorities were adjudicated by the final decree of 1895.

The judgment is right and should be affirmed, and it is so ordered.  *Affirmed.*