## No. 11,557.

### HUERFANO VALLEY DITCH AND RESERVOIR CO., ET AL. *v.* HINDERLIDER, ET AL.

Decided April 25, 1927. Rehearing denied June 6, 1927.

Proceeding involving irrigation decrees and distribution of water. Judgment of dismissal.

### *Affirmed.*

1. APPEAL AND ERROR—*Pleading.* Where there is no specification or argument in support of an assignment of error that the court erred in sustaining a motion to strike, the ruling of the trial court will be upheld on review.

2.       *Pleading.* In the absence of an agreement or court recital, parties are not, as a matter of right, entitled to have matters which were excluded from their complaint on motion to strike, considered on review.

3.   WATER RIGHTS—*Decrees.* Valid adjudication decrees in the same water district take rank and precedence in order of time of rendition, the doctrine being, first in order of time, first in priority of right.

4.       *Decrees—Validity.* An adjudication decree unless judicially changed or modified within the statutory period becomes absolute and may not be questioned or attacked except for fraud.

5.       *Adjudication—Consecutive Numbering—Distribution.* Although there may be successive statutory adjudications in the same water district, yet all priorities must be consecutively numbered and water distributed in accordance therewith.

6.   APPEAL AND ERROR—*Evidence—Judicial Notice.* The Supreme Court takes judicial notice of statements in its former opinions determining water controversies.

7.   WATER RIGHTS—*Adjudication Proceedings.* An adjudication proceeding held to embrace the entire water district although priorities were awarded only to ditches in one county.

8.       *Adjudication—Jurisdiction.* Parties having participated in an adjudication proceeding and received benefits under the decree may not question the jurisdiction of the court in which it was rendered.

9.       *Water Districts—Estoppel.* Parties who were before the court in a statutory adjudication proceeding, receiving benefits under the decree which recognized a particular county as being within the water district, could not thereafter complain of the decree so declaring.

10.      *Decree—Estoppel.* Parties having accepted benefits under an adjudication decree may not thereafter repudiate any of its provisions.

11.      *Adjudication—Notice.* Publication of notice of a statutory adjudication proceeding in the county in whose district court the petition is properly filed, is sufficient to give the court full jurisdiction of all parties in the district.

12.      *Supplemental Decree—Validity.* A supplemental or additional statutory adjudication decree which purports to subordinate priorities decreed by an earlier adjudication to priorities awarded in the later decree is to that extent absolutely void.

13.  *Adjudication.*  Parties claiming priorities of right to the use of water under a decree which adopts and confirms an earlier decree may not assert superior rights to those awarded in the earlier decree.

14.  *Distribution—Effect.*  Alleged distribution of water by officials in accordance with a supplemental decree held not to justify a judicial holding that earlier priority owners had surrendered their superior rights.

15.  *Supplemental Proceeding—Effect.*  A supplemental adjudication proceeding does not constitute a re-opening, review or re-examination of an earlier valid decree.

16.  *Decree—Ratification—Estoppel.*  Parties will not be heard to deny the ratification of an adjudication decree procured by themselves.

*Error to the District Court of Huerfano County, Hon. A. C. McChesney, Judge.*

Mr. H. E. BRAYTON, Mr. J. H. VOORHEES, Mr. E. F. CHAMBERS, for plaintiffs in error.

Messrs. NORTHCUTT & NORTHCUTT, for defendants in error.

*Department Two.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

THE controversy set forth in the amended complaint is nominally between private corporations and individuals, owners of lands and irrigating systems and their decreed appropriations of water, all of which are situate in Pueblo county in water district No. 16, and the headgates of their ditches that divert water from the Huerfano river have their headgates in that county. These parties are the plaintiffs. The defendants are Mr. Hinderlider, as state engineer of Colorado, and his subordinate officers of the water district with whom are

joined as codefendants corporation and individual owners of water rights and irrigation systems situate in Huerfano county in the same water district, the headgates of whose distributing ditches are all in Huerfano county. The controversy was precipitated by a final ruling of the state engineer reversing on appeal a ruling of one of his subordinates. This final order directed a distribution of water in accordance with the provisions of what is designated in the record, and referred to in the briefs, as the Read decree. Such distribution was to be made, first to the claimants under the Read, and thereafter to the claimants under the so-called Killian, decree, both of which were rendered by the district court of Huerfano county: the Read decree on June 11 or 12, 1889, and the Killian decree in 1898. The real controversy, however, is between the claimants of decreed water rights in the same water district under different decrees of the same court made at different times.

To the amended complaint are attached many exhibits consisting of the pleadings and various proceedings leading up to these two decrees. The defendants' motion to strike various of these exhibits and of the allegations proper of the amended complaint was sustained by the trial court. Thereafter the defendants' demurrer to the complaint, on the ground that it did not state facts sufficient to constitute a cause of action, was sustained, and as the plaintiffs refused to amend, but stood by their complaint, the action was dismissed and plaintiffs are here with their writ of error.

1. One assignment is that the trial court erred in sustaining defendants' motion to strike. If there is error in such ruling, it has not been brought to our attention. Plaintiffs below, who are plaintiffs in error here, argue generally that there was error, but no specification or argument thereon which they make supports their contention; hence we must uphold the court's ruling on the strike motion. The sole ultimate question for

determination then is whether defendants' demurrer was properly sustained and that depends upon the case as made by the amended complaint as it was left after the exclusions as above stated.

2. We have just indicated that, in determining the sufficiency of the amended complaint we are not required to read into it the portions which the court on motion eliminated. Nevertheless, in their briefs here plaintiffs frequently refer to these excluded portions and their counsel assert, what defendants' counsel deny, that by agreement of the parties at the trial below the case was submitted and argued upon the understanding of both parties, which they say should be given effect on this review, that in the consideration here these excluded matters should be regarded still as a part of the amended complaint. In the absence of agreement or consent of the parties, or of an equivalent court recital, and there is neither agreement nor recital, plaintiffs, as matter of right, are not entitled to have such excluded matters considered by us as part of the amended complaint when we come to pass upon its sufficiency, as against the defendants' general demurrer. But if, as may be done without prejudice to the defendants, we choose to comply with plaintiffs' request to dispose of the assignment as if the complaint, as originally filed, is properly before us, the result, as we shall presently see, will be the same; for the amended complaint, even with the stricken matter in it, considered in its entirety, fails to state a cause of action.

3. The discussion by plaintiffs covers a wide range; more extended than the controlling issues justify. A careful examination of the record as abstracted, supplemented by a like examination of the transcript, convinces us that the plaintiffs' entire case depends upon the integrity of the so-called Read decree, which was rendered by the district court of Huerfano county June 11, 1889. If it is valid as a statutory decree, then the decree under

review is right. If the Read decree is void, then the decree in this case is wrong.

4. At least three different statutory decrees in three separate proceedings, and at different times, have been made, or purport to have been made, in water district No. 16 which establish or evidence the priority of water rights and the distribution thereunder of water for irrigating lands of the priority owners in that district. In order of time of rendition they are: (1) The Read decree by the district court of Huerfano county, June 11, 1889; (2) the Pueblo decree by the district court of Pueblo county of a later date, some time in 1889 or 1890; (3) the Killian decree by the district court of Huerfano county in 1898. If these separate decrees are each and all properly rendered statutory decrees in the same water district, and the court had jurisdiction in each case and regularly pursued its authority, the ordinary rule in this state, and generally in such special statutory proceedings, is that the decrees take rank and precedence in order of time of rendition, the doctrine being first in order of time, first in priority of right. And this is so because under our statutes and previous decisions when the first statutory proceeding thereunder is properly instituted and merged into a final decree, unless changed or modified in a judicial review or re-examination by the court of rendition, which must be asked for by a dissatisfied appropriator in the same water district within two years after the decree is made; or unless so modified or changed or set aside by an aggrieved appropriator in another water district in a suit in equity in the proper court, which must be brought within four years after rendition, such a decree becomes absolute against all the world and may not be questioned or attacked on any ground thereafter except for that sort of a fraud in its procurement which a court of equity regards as sufficient to nullify or vacate it. And it is also the law with us that though there may be successive

statutory proceedings in the same water district for the ascertainment therein of priorities of right, yet all such priorities must be consecutively numbered, beginning with number one, and water is to be distributed in accordance therewith; that is, in times of scarcity the parties are to be supplied in such numerical order. When the first decree is once rendered and becomes, by lapse of time, absolute and free from attack, then, in a second or supplemental proceeding, any priority of right that may be awarded therein, or, speaking more accurately, the earliest priority in the second proceeding, must be of a later date and number than the latest or lowest priority awarded in the first proceeding; and the earliest numbered priority in a second, must be the next consecutive number after the latest numbered priority of the first, proceeding. And the same rule applies to all successive supplemental proceedings. So that, if in the Read proceeding the adjudication was made under the statute, that is, if it was not, as plaintiffs assert, restricted to the parties appearing therein and to Huerfano county alone, but was properly an adjudication of priorities of the entire district, its priorities are superior to those awarded under any later rendered decree in the same water district. *Crippen v. X. Y. Irr. D. Co.,* 32 Colo. 447, 76 Pac. 794; *Broad Run Co. v. Deuel Co.,* 47 Colo. 573, 108 Pac. 755; *Doll v. McEllen,* 21 Colo. App. 7, 121 Pac. 149; *Nichols v. McIntosh,* 19 Colo. 22, 34 Pac. 278. With the foregoing principles of law in mind we are prepared to consider the alleged infirmities which the plaintiffs assert make the Read decree void or ineffective as against the plaintiffs' priority decree in the third or Killian proceeding.

First we observe that in the different suits which these parties and their respective grantors have brought or defended, none of them seem to have been entirely consistent. If the strict rule relating to inconsistent attitude of litigants in different suits arising out of the same subject matter is now to be enforced, it might be that neither

group of the alleged parties here could be heard with its respective grievances. It seems from the amended complaint, and we judicially know it from statements in our opinions in former cases, that these and other water right owners in Southern Colorado were in doubt both before and after the first or Read proceeding in the district was instituted, as to what territory or counties or parts of counties the General Assembly intended to include in water district No. 16. Without dwelling upon the pertinent statute, it is enough for our present purpose to say that the parties here are now in accord that the district embraces all lands irrigated through ditches and canals taking water from the Huerfano river and its tributaries (section 1857, C. L. 1921), and that plaintiffs' lands and priorities situate in Pueblo county and defendants' lands and priorities situate in Huerfano county are included therein. It should also be stated that though plaintiffs and their grantors first participated in and received awards in the second or Pueblo proceeding and decree, and thereafter participated in and received awards in the later and third Killian proceeding, in this proceeding, however, none of the parties, either the plaintiffs or defendants, assert any rights under the Pueblo decree; hence its validity or pertinence as between the parties to this controversy is not considered or decided.

5. Plaintiffs urge various grounds which they say make the Read decree invalid. Their first proposition is that the parties who instituted the proceedings in the district court of Huerfano county, that ended in the Read decree, intended thereby to secure, and did secure, an adjudication of priorities limited to lands situate in Huerfano county only, which is but a part of water district No. 16, which included both Huerfano and Pueblo counties. Their reliance for this contention is upon certain pleadings and parts of the record in the Read proceeding. Possibly the entitling of some of the papers is not strictly accurate or definite, but, taking it as a

whole, the record now before us, as the trial court evidently found, shows that not only the petition there discloses that an adjudication was sought of priorities in the entire water district, but the various interlocutory orders of the court, such as orders for publication of notice and the appointment of a referee and similar orders, make manifest that the object of the proceeding embraced the entire water district and the decree itself purports to be one covering the entire district. It is true that priorities were awarded only to ditches and canals within Huerfano county, but that was because only as to such ditches and priorities was evidence produced. As already mentioned, doubt and uncertainty existed; at least, some of the appropriators of water in that region, including the plaintiffs and their grantors, were uncertain as to the boundaries of the district and both the plaintiffs and the defendants here have not at all times been consistent with respect thereto. The record here discloses, and plaintiffs do not question it, that after they and their grantors instituted the Pueblo proceeding in the district court of Pueblo county on the theory that it was the proper court for such adjudication, and got decrees that purport to be made in a proceeding including the entire district, they, themselves, felt insecure and so they afterwards instituted the proceeding known as the Killian proceeding in the district court of Huerfano county. As this court said in *Field v. Kincaid,* 67 Colo. 20, 184 Pac. 832, this was apparently on the theory that the Read decree was valid and superior to that of the Pueblo decree because the district court of Huerfano county and not that of Pueblo had exclusive jurisdiction to make such determination. After studying this record we would be inclined to say, were it necessary to a decision, that not only was that apparently the plaintiffs' theory in the Field case but it was manifestly the theory which they then entertained. In the Field case it was not necessary for this court to determine, and it did not pass upon, the validity of the Pueblo decree because the defendants there, who are the plaintiffs

here, having submitted to the adjudication of the Huerfano district court in the Killian proceeding, and having received the benefits of the decree, could not be heard to say that the Huerfano district court did not have jurisdiction in the premises. In passing, we observe that we do not see why the same rule is not applicable to the present controversy. It is well, however, before discussing that point, first to state the further objections of the plaintiffs.

They say that when the Killian proceeding was instituted by them the defendants in this action appeared therein and asserted by their demurrer to the Killian petition that the same should not be maintained because water district No. 16 does not include Pueblo county, therefore they are now estopped to say that Pueblo is within its boundaries. First we say whatever might have been the contentions of these parties as to the boundaries of the district theretofore, since that time all of them have been bound by, and have acquiesced in, that decision which was that Pueblo county was in the district. In the second place we say that if the defendants, because of their attitude in the Killian proceeding, are now estopped to say that Pueblo county is in water district No. 16, then for a similar reason the plaintiffs are estopped to say that Pueblo county is not a part of the water district, and, therefore, the Read decree is not a statutory proceeding, but one binding only the parties thereto. If they should be held to that statement, on the same principle their rights under the Killian decree would fall and they would have no standing at all in this court. In the third place the decision of the court in the Killian proceeding, that Pueblo county is a part of the district, is conclusive upon both parties, whatever they may now say, not only because they were before the court in the Killian proceeding and received benefits under the decree, but also because both parties are here in accord that Pueblo county is in the district and neither of them may now complain of the decree so declaring.

Furthermore, even if the Read decree, when it was rendered, was not binding upon the plaintiffs, it became binding and conclusive upon them when the court in the later Killian decree expressly confirmed and adopted the Read decree in its entirety; and this is so because plaintiffs and their grantors not only instituted and prosecuted to a final decree the Killian proceeding, but the only rights they assert here are derived from and depend upon the Killian decree. Since they have accepted benefits under it, they cannot repudiate its provisions and one of its provisions is an express adoption and confirmation of the Read decree. Field case, supra.

6. Another infirmity which it is said attaches to the Read decree as against the rights of the plaintiffs is that the required statutory notice in the Read proceeding was published only in the one county of Huerfano and not in the county of Pueblo, which is a part of the same district. This contention is based upon the unwarranted assertion that the statute requires publication in a newspaper in each county in the district. The statute does not so read. In *Wadsworth Ditch Co. v. Brown,* 39 Colo. 57, we held that publication, if made in the county in whose district court the petition is properly filed, vests jurisdiction in that court, which thereafter retains it for all purposes, and all water owners in a district which embraces more than one county are thereby made parties to the proceeding and bound by it whether they appear therein or not. In the Wadsworth case we suggested to the district courts that they might, in future proceedings, under their statutory power to prescribe rules and regulations therein, require publication in each county; but we said that under the statute publication in the one county gave the court full jurisdiction and all parties in the district thereby become parties.

Though some color is lent to the plaintiffs' claim to the contrary, such as already referred to as the inconsistent attitude in one instance of the Read claimants, we reach the conclusion that the Read decree of 1889 is

a valid statutory decree and binding on the plaintiffs. In the Field case, supra, substantially the same objections made by plaintiffs here were made by them as defendants there, and decided adversely to them. The Field case may not be res adjudicata of this controversy but the reasoning of the court there and the actual decision we think are applicable here. Plaintiffs or their grantors instituted the Killian proceeding which was carried into a final decree. It was not a review or reexamination within two years of the Read proceeding or the Read decree, nor was it a suit in equity brought within four years for the enforcement of their own alleged antagonistic priorities. It was merely a supplemental or third statutory proceeding for an adjudication of their priorities by what they deemed a court that had jurisdiction. In this Killian proceeding the plaintiffs procured a supplemental decree which purported to establish their priorities. The very Killian decree which they obtained expressly adopted and confirmed the Read decree in its entirety. And by specific designation it was the Read decree of 1889, not some modification thereof, or addition thereto, that was meant. We did not hold in the Field case, as the plaintiffs now claim, that the Killian and Read decrees were practically one and the same decree in the sense that their respective priorities of right were then first determined, but we did say, and now repeat, that they are practically one merely for the distribution by the water officials according to such respective priorities. What was really decided in the Field case, so far as concerns the relative rights of the respective priority owners, is that the Killian decree, in effect, is but a continuation of the Read decree and consequently a confirmation of it. The Killian proceeding, being as it was a supplemental one in that water district its decreed priorities necessarily are junior to the latest one in the earlier Read decree. So it is clear that, by our statement in the Field case that the two decrees are practically one, we meant that they were to be con-

sidered as one by the water officials in distributing water. This must be so for the priorities, as between the respective claimants, had already been determined—the Read priorities by the first decree, the Killian priorities by a subsequent decree. This is further evident since the latter decree adopted and confirmed the earlier Read decree.

What probably has given rise to this controversy is that the court in the Killian proceeding, after it had adopted and confirmed the Read decree, proceeded to award to some of the Killian ditches, priorities earlier than those awarded in the Read decree. That portion of the decree in the Killian case purporting to subordinate the Read priorities to those of the Killian priorities is absolutely void and without jurisdiction. The time for such changes had long before expired. We, therefore, have before us a first decree which established the Read priorities and a later and subsequent decree, in a supplemental proceeding, which establishes in the same water district some priorities as superior to those of the earlier decree. Both decrees, as to priorities, cannot stand. The district court in the Killian proceeding exceeded its jurisdiction in so far as it attempted to subordinate the Read, to the Killian, decree. In the Field case we said the Killian claimants under the Pueblo decree were estopped to assert their priority as against those awarded by the Killian decree, because they had participated in the Killian proceeding and received benefits therefrom. As already indicated, we do not see why the same rule is not applicable to the present controversy. These Killian claimants who now assert superior rights to the Read claimants not only initiated the Killian proceeding, but they participated therein and received benefits therefrom and the very decree, which evidences whatever rights they have, expressly adopted and confirmed the Read decree which means, if it means anything, that the Killian claimants at the time recognized the priorities of the Read decree. The very decree which

they thus procured, recognizes the Read priorities of 1889, which is necessarily implied from the adoption and confirmation of it. It would seem to follow therefore that under no theory of the case may these plaintiffs assert their alleged superior rights against the defendant claimants under the Read decree.

7. Considerable stress is laid upon the allegation in the amended complaint that the distribution of water by the water officials for many years after the Killian decree was rendered has been made in accordance with the priorities thereby established, some of which antedate the priorities of the Read claimants, the defendants in this case. This is not an accurate or complete statement of the amended complaint. A careful reading shows that distribution was made under the Read and Killian decrees as one, not under the Killian alone. If, then, distribution was thus made, it follows that there is nothing in this special plea as to administration of water that operates to destroy the senior priorities of the Read claimants. Besides, for aught that appears to the contrary, it may be that such distribution did not result in injury to the defendants until about the time they demanded of the water officials to make distribution strictly in accordance with what they asserted to be their rights; that is, first to the Read claimants and thereafter to the Killian claimants. So that there is an absence in the amended complaint of the proper averments to justify us in holding that the defendants have voluntarily acquiesced in anything that has occurred which would result in the surrender by them of their valuable water rights which, if not in some legal way surrendered or yielded to the plaintiffs, are superior to their rights. The Killian proceeding does not constitute a reopening or a review or re-examination of the Read decree. It was a third or supplemental proceeding and its accomplished purpose was to secure a supplemental decree. The court had jurisdiction to entertain it as such, but did not have the power to

modify or change priorities of the Read decree that had become absolute by lapse of time. The two and four years' limitation of our statute had run and during such periods the plaintiffs made no attempt to change the Read priorities. After the Read decree was made, June 11, 1889, plaintiffs say, and such seems to be true, some of the parties who participated in the original proceeding, filed a subsequent or supplemental proceeding asking for and receiving some changes or modifications therein, and the date of the order making the changes was February, 1894. Plaintiffs now seize upon this on which to predicate the assertion that the Read decree was thus reopened or re-examined and became a final decree on this date and not before, and that they are not estopped by our statute to maintain this proceeding to attack it. There are several answers to this contention. The change, if any, made in 1894, even if it binds those who participated or acquiesced therein, does not bind these defendants who did not appear. Besides, the Killian decree on which plaintiffs rely, by express designation ratifies and affirms the Read decree as made in 1889. Plaintiffs may not be heard to deny that ratification because they themselves procured it. Their own pleadings here and their exhibits are against them. This contention of the plaintiffs is also inconsistent with their position that the Read proceeding was a voluntary and not a statutory one, and that the decree therein is not a statutory decree that binds anyone except the immediate parties to it. Possibly we have devoted more time and indulged in a more extended argument than is necessary, but the novelty of the various positions taken by the plaintiffs, and the partial and incomplete and fragmentary part of the various records on which they rely, have led us into a broad field of investigation. We are entirely satisfied that the present suit is but a continuation of the efforts of these plaintiffs which resulted unfavorably to them in the Field-Kincaid case. It was unsuccessful there and it is unsuccessful here. It is their

misfortune if they lose valuable rights in the various controversies which they have waged. If at first they attempted to establish their rights in a court without jurisdiction, they must suffer the consequences. This court, without undoing many of its previous decisions, cannot afford them relief. The rights of these defendants to the property in controversy are absolute through the lapse of time and we cannot arbitrarily divest them. The judgment is accordingly affirmed.

Mr. Chief Justice Burke, Mr. Justice Adams and Mr. Justice Butler concur.