Mr. Justice Groves
delivered the opinion of the Court.
The plaintiffs in error, called the petitioners, applied to a water division engineer for a change in administrative *317 practice. Some of the defendants in error were protestants in the proceeding. The application was denied and an appeal was taken to the State Engineer who sustained the division engineer. A writ in the nature of certiorari was sued out in the district court under R.C.P. Colo. 106. The court declined to grant the requested relief and the matter is here on writ of error. We affirm.
Water District No. 18 was created by statute in 1885, embracing all or portions of Bent and Las Animas Counties. Shortly thereafter the Widderfield Ditch Company petitioned the district court of Bent County for an adjudication of water rights in the Apishapa River in that district. Judge Caldwell Yeaman, the district judge, appointed a referee, who, after publication and hearing, made his report to the court. On March 12, 1887 Judge Yeaman entered a decree adjudicating 13 priorities numbered consecutively 1 through 13.
In February 1888, the same Widderfield Ditch Company petitioned the district court of Las Animas County for an adjudication of water priorities in the Apishapa River for District No. 18, alleging “that the priorities of rights to use of water for said district have not 'been adjudicated.” The same Judge Yeaman entered an order granting the petition and appointing a referee, who was an individual other than the one appointed in Bent County.
The order appointing the referee in the Las Animas County proceedings directed the referee to “take all such evidence in writing, and consider the same together with any and all evidence, if any, which may have been heretofore offered and taken in the same matter in said district by any referee heretofore appointed.” Notice of the proceedings was given in the same manner as in the Bent County proceedings.
In August 1888, 6 months after the order granting the Las Animas County petition and appointing the referee and a number of months following publication of notice of the adjudication, one George Salisbury filed a motion *318 to dismiss the proceedings in Las Animas County on the grounds that the ditch rights of the Widderfield Ditch Company had been adjudicated in the Bent County adjudication and that the pending proceeding was in violation of a statute, “Ch IV G.S. 1762.” The motion was denied. The referee later submitted his report in the Las Animas County proceedings, and Judge Yeaman entered a decree on March 14, 1891 adjudicating 30 priorities numbered consecutively from 1 through 30.
At some time thereafter someone prepared a list according to appropriation dates of the 13 priorities in the 1887 decree, the 30 priorities in the 1891 decree and 6 more priorities contained in adjudications of 1903 and 1909. This combined list listed the 47 priorities in the 4 decrees according to priority date. For example, the Desidero Lovato Ditch decreed in the later Las Animas proceedings to have an appropriation date of April 30, 1867, was given priority No. 3, whereas the Widderfield Southside Second Enlargement decreed in the earlier Bent County decree to have an appropriation date of March 31, 1886, was given priority No. 45. The record does not disclose who prepared the combined list or the time of preparation. The State Engineer, in his findings made on October 14, 1964, found that the combined list had been in use and had been followed by water officials “for many years.” Parenthetically, we are not here concerned with any of the priorities adjudicated in 1903 and 1909, but rather only those adjudicated in the 1887 and 1891 decrees.
Earlier in 1964, the petitioners made their application to the division engineer, asking that all rights decreed in the Bent County decree be given priority over the earliest right decreed in the Las Animas County decree. See Huerfano Co. v. Hinderlider, 81 Colo. 468, 256 P. 305. The division engineer concluded to continue the administration of priorities as shown by the combined list. In sustaining the division engineer, the State Engineer found that the Las Animas County proceedings were a con *319 tinuation of the Bent County proceedings and that the two decrees should be considered as one. This finding was predicated upon the following three matters: (1) Judge Yeaman’s order that the referee should consider evidence “taken in the same matter in said district by any referee heretofore appointed”; (2) the dismissal of Mr. Salisbury’s motion; and (3) the long continued use of the combined list. The district court, in affirming the ruling of the State Engineer, found that the crux of the action was whether the State Engineer’s decision was supported by any evidence; that there was sufficient evidence to support the State Engineer’s finding that the Las Animas County decree was a result of the continuation of the proceedings in Bent County; that the petitioners had failed to show that the decision of the State Engineer was arbitrary and capricious or that the State Engineer had abused his discretion.
The sole issue presented is whether there was evidence to support the conclusion that the Las Animas County proceedings were merely a continuation of the Bent County proceedings, and that the two decrees be treated as one. If that was Judge Yeaman’s intent and if such a continuation was unauthorized or invalid, the lack of authority or invalidity cannot now be questioned by reason of the statute of limitations in C.R.S. 1963, 148-19-1, and particularly subsection (1) (d) thereof. This statute in effect bars action attacking a decree if water officials have recognized the decree as being valid for a period of 18 years or more and have caused water to be diverted in accordance therewith. If Judge Yeaman considered the two decrees as separate and as being final decrees in two different proceedings, it would follow that each was valid; that the last appropriation date in the earlier decree would have priority over the earliest appropriation under the later decree; and that this statute of limitations would have no effect.
If the record disclosed that a combined list of the first two decrees had been made immediately after the entry *320 of the Las Animas County decree, or that the combined list involved here had been prepared from some sort of memorandum or certificate made by the court at that time, certainly this would support a conclusion that Judge Yeaman treated the second proceeding as a continuation of the first. However, the record does not show this. Instead, it merely discloses a list that of necessity had to be made in or after 1909, as it contains information from the 1909 decree. Consequently, we do not consider the existence of the combined list, originating at some unknown time, as sufficient evidence to support a finding that Judge Yeaman regarded the Las Animas County proceedings as a continuation of the Bent County proceedings.
Similarly, we do not view the statement in the petition originating the Las Animas County proceedings “that the priorities of right to use of water in said district had not been adjudicated” as sufficiently significant to support any conclusion as to the connection or lack of connection between the two decrees. Likewise, we find little significance in the fact that Judge Yeaman denied Mr. Salisbury’s motion to dismiss the proceedings in Las Animas County. Mr. Salisbury predicated that motion upon a statute which provided that when a water district extends into two or more counties, the district court of the county in which the first regular term after December 1st shall soonest occur has jurisdiction. G.S. § 1762. Apparently the district court of Bent County was the first to begin its term after December 1st. If the statute had gone no further, we might conclude that Judge Yeaman’s denial of the motion was predicated solely upon a conclusion that the second proceeding was a continuation of the first. However, the statute further provided that once proceedings were commenced and a referee appointed, the court thereafter retained exclusive jurisdiction of the whole subject until final adjudication. Thus, it is logical and possible that Judge Yeaman concluded that, since the motion was filed long after entry of his *321 order appointing the referee, he retained jurisdiction in Las Animas County under the provisions of this statute.
We do find significance in Judge Yeaman’s act of including in his order granting the petition in the second proceeding the direction that the referee should consider evidence taken in the same matter in said district by any referee theretofore appointed. We regard this as sufficient evidence to foreclose any declaration that the rulings of the division engineer and State Engineer constituted an abuse of discretion. That is to say, that the use of “the same matter” indicates that the Las Animas proceeding was considered by Judge Yeaman as the same matter as the Bent County proceeding.
We should consider the status of water law at the time Judge Yeaman acted in 1888. By present standards, at first blush, the action of the water officials might appear to be clearly erroneous. We are presently well ingrained with the proposition that, no matter how early an appropriation date may be in a later decree, it has a lower priority than a much later appropriation date contained in an earlier decree. Huerfano Co. v. Hinderlider, 81 Colo. 468, 256 P. 305 is but one of many Colorado cases that so holds. However, this rule was first stated in Colorado decisions rendered subsequent to 1888 and we cannot presume that Judge Yeaman could forsee the rules of law that this court would promulgate in the future. The statutes governing adjudication of water rights were adopted in 1879 and 1881. G.'S. §§ 1762- 1788. Joseph R. Long in his work on irrigation characterized the 1881 act, which was supplementary to the 1879 act, as being “arranged with a striking disregard of the first principles of logical order”; and he further stated that “its absurd arrangement offends the logical sense of every intelligent reader.” J. Long, Law of Irrigation 193-94.
Volume 10 of the Colorado Reports was published sometime during the year 1888. Volume 11 was not published until the following year. Therefore at the time Judge Yeaman entered his order early in 1888 he could have *322 had no more than the first ten' volumes of Colorado Reports, and probably had only the first nine. (The original Color-ado Court of Appeals published its first opinions in 1892.) Volume 5 of the Colorado Reports was published in 1882 and Volume 6 in 1883. Therefore, since the 1879-1881 acts originated the adjudication processes in Colorado, Judge Yeaman was dependent at best upon Volumes 5 through 10 of the Colorado Reports for any authority as to how one should proceed when presented with a petition such as the one filed in Las Animas County in 1888. A review of those six volumes demonstrates that there was no authority in this particular for him to glean. He could not look to other states for authority as Colorado’s adjudicative processes were and are different from those of any other jurisdiction.
It thus becomes apparent that in the early, rather disordered state of our adjudication statutes with a paucity of decisions interpreting the statutes, Judge Yeaman easily could conclude that the Las Animas proceedings could and would be a continuation of those in Bent County. As illustrative of this conclusion we find that a district judge may have reached the same conclusion under much more definite statutes as late as 1928. Kibbee v. Kostelic, 87 Colo. 215 at 219, 287 P. 652.
In attaching significance to the statement in the order that the referee should consider testimony given to a previous referee in the same matter, we are not unmindful that similar language was contained in the 1881 statute. The statute states that the referee should consider evidence produced before him, “together with any and all evidence, if any, which may have been heretofore offered and taken in such district in the same matter by any referee heretofore appointed under the provisions of [the 1879] act.” G.ÍS. § 1766. It might be argued that the statement in Judge Yeaman’s order means nothing as it was merely copied from the statute. However, it is a logical conclusion that if there had been no adjudications in District No. 18 prior to 1888, Judge Yeaman *323 would not have referred to a referee theretofore appointed in the same matter. We regard such a conclusion as sufficient to prevent us from finding an abuse of discretion on the part of the division engineer and the State Engineer in finding that one proceeding was a continuation of the other.
Again, we are not determining whether the Las Animas County proceedings were a continuation of those in Bent County. Rather, the narrow issue presented to us is whether the division engineer and the State Engineer' committed an abuse of discretion in finding that such was the case. We conclude that there was sufficient evidence to support a finding, and we therefore hold there was no abuse of discretion. Marker v. City of Colorado Springs, 138 Colo. 485, 336 P.2d 305.
It has been argued that the water officials were making a judicial determination. On the contrary, the division engineer was merely performing his duty as defined by C.R.S. 1963, 148-12-5 to distribute water in accordance with priorities established by judicial decree. In order to thus perform his duty he would have to determine whether he was dealing with one combined decree or two separate decrees.
The fact that each decree numbered the priorities in sequence from the digit “1” perhaps has some significance, but to us it is not controlling.
Judgment affirmed.
Mr. Justice Kelley not participating.