## No. 12,594.

HASSLER ET AL. V. FOUNTAIN MUTUAL IRRIGATION
COMPANY ET AL.
(26 P. [2d] 102)

Decided July 3, 1933. Rehearing denied October 23, 1933.

Mr. HARRY N. HAYNES, Mr. CHARLES H. DUDLEY,
Messrs. CHINN & STRICKLER, for plaintiffs in error.

Messrs. STRACHAN & HORN, Messrs. SHERWIN & HUN-
GERFORD, Mr. CHARLES H. SMITH, for defendants in error.

Mr. HENRY MCALLISTER, amicus curiae.

*En Banc.*

MR. JUSTICE BOUCK delivered the opinion of the court.

THE present case involves a contest in water district
No. 10 between the respective owners of decreed priority
rights in the use of water from Fountain creek within
El Paso county near the city of Colorado Springs. It
appears to be not so much a matter of direct or conscious
conflict as it is of apparent uncertainty, or difficulty of
getting at the real meaning, of the rights originally de-
creed.

We are concerned here with two of the earliest priori-
ties of the district and of the territorial days in fact;
namely, No. 4—effected by means of the Treadwell &
Lamb Ditch (or ditch No. 4), now owned by those de-
fendants in error, defendants below, who are not water
officials—and No. 10, effected by means of the Laughlin
Ditch (or ditch No. 10), in which the plaintiffs are in-
terested. The latter are also interested in priority No.
17, likewise effected by means of ditch No. 10.

The plaintiff sought an injunction in the district court
to keep the defendants' diversion down to an amount of
water less than one-half of what the defendants claimed.
The court refused to enjoin or restrain the defendants,
and the plaintiffs now seek a review of that judgment.

The three priorities mentioned, together with others,
were adjudicated in the general adjudication of 1882,
defendants' No. 4 dating from 1861, plaintiffs' No. 10
from 1862, and plaintiffs' No. 17 from 1863. The seeds of
discord were sown when, instead of describing the priori-
ties in terms of second-feet flow, as was customary in
later Colorado adjudications, the court at that time ad-

248

judged what was the capacity of each ditch and that it was "intended to irrigate" a given number of acres, No. 4, 100 acres, Nos. 10 and 17, 450 acres.

The history of the lands under these ditches and of the use given the water as represented by the various priorities was gone into in great detail at the trial. The record, the abstract of record, and the briefs are all models of what under the conditions must be deemed a marvelously succinct and able treatment, by counsel, of a multiplicity of facts and points of law as well. But we find that, owing to the original lack of a definite method of measuring the water to be used by virtue of the respective priorities, considerable importance attaches to the practical interpretation or construction placed upon the decrees by those officials charged under the statutes with the duty of giving effect thereto and of distributing the water thereunder.

■■■ It is, of course, not for this court to say what particular conclusion was the proper one for the trial judge to draw from the mass of conflicting evidence, including the evidence bearing upon the duty of water, and the beneficial use made thereof during a period of more than half a century. Our task is to review the record with the sole purpose of ascertaining whether any prejudicial error as to the law has been committed and whether the findings and judgment entered by the lower court are supported by substantial evidence or not. Applying this rule, we believe that the trial judge was justified in making his findings generally for the defendants and entering judgment in their favor. Incidentally we may mention that, under another salutary rule of procedure, the expressions employed by the judge in the more or less informal remarks he made in court, after all the evidence was in and before the entry of the formal findings and judgment, cannot weaken or nullify the legal effect of the later solemn judicial declaration.

In view of the above, a summary or analysis of the evidence would be of no service to either side. We realize

that counsel for the plaintiffs strenuously and plausibly argue against the position we announce. The seeming disparity between the requirements for irrigating the 100 acres which the court had in mind in connection with its decree on No. 4 and the requirements for irrigating the 450 acres for which the court decreed in favor of No. 10 and No. 17 is such as to lend color to their contention. 9.84 second feet and 9.36 second feet, fixed by water officials within the scope of their administrative duties as the amounts to which the defendants' and the plaintiffs' priorities are respectively entitled, do indeed look inconsistent, yet we have no right to say that this is a real or fatal discrepancy which the trial judge ought to have considered as vitiating the presumably honest judgment of a long line of water officials who have deliberately administered in accordance with these calculations. It must be remembered that this is not at all an attack upon the decree itself. The time to assail the latter has long since passed.

██ Because of the direction some of counsel's arguments have at times taken, we call attention, in passing, to the principle firmly established in this state that the right to the use of the water is not limited to the land where the water was first applied; a water right may be alienated apart from the land, or its use transferred from one place to another, or even the character of use changed, provided only that in each instance no injury results to vested rights of other appropriators. We take it that no citations are necessary in this connection. It is also the law that water appropriated and decreed may be applied to a larger or smaller acreage, and on a different kind or character of land, so long as such operation does not divert a larger quantity of water than was decreed. Here again we assume that authorities need not be cited.

The trial judge expressly stated that the operations of the defendants did not work an injury to the vested rights of others.

For the reasons above assigned, we think there is no reversible error in the record, and the judgment of the district court denying the application for an injunction or restraining order must be affirmed.

Judgment affirmed.

MR. JUSTICE HILLIARD not participating.