No. 15,626.

HINDERLIDER, STATE ENGINEER ET AL. *v.* CANON HEIGHTS IRRIGATION AND RESERVOIR COMPANY.
(185 P. [2d] 325)

Decided September 22, 1947.

Mr. H. LAWRENCE HINKLEY, Attorney General, Mr. ST. GEORGE GORDON, Assistant, Mr. EDWIN H. STINEMEYER, Mr. JOHN M. BOYLE, Mr. CHARLES F. MORRIS, for plaintiffs in error.

Mr. A. W. MCHENDRIE, for defendant in error.

MR. JUSTICE STONE delivered the opinion of the court.

IN 1910 the Park Center Land and Water Company obtained decree in the district court of Fremont county for changing point of diversion of all or parts of twenty-four priorities of water rights in Four Mile or Oil Creek, which had theretofore been diverted through twelve different ditches, to the headgate of the Park Center ditch. The amount of water involved was approximately fourteen cubic feet per second. Prior to this change there had been diverted through the Park Center ditch only a very small amount of water, and that of late priority. It appears from the very meager record, that the point of diversion of the Park Center ditch is below that of all the other ditches except the Titsworth, Craig-Beckham,

and Wafford ditches, and that the Titsworth and Craig-Beckham now use a common point of diversion. It also appears that the change of point of diversion was for the purpose of changing place of use and that as a result only part of the return water came back to Four Mile Creek; but as to the amount of return flow prior or subsequent to change of point of diversion, and as to whether or not the part returning since the change reaches the creek above or below the headgates of the lower ditches, the record does not disclose. Included in the priorities transferred to the Park Center ditch were all of priority No. 1, transferred from the Green ditch, part of priorities No. 2, No. 4, and No. 28 from the Titsworth ditch, all of No. 3 and part of No. 5 from the Craig-Beckham ditch. There had been decreed to the Wafford ditch priorities numbered 6, 10, 20, and 72. none of which was transferred to the Park Center. The change of point of diversion decreed in 1910 was granted only upon certain conditions, the third and fourth of which read as follows:

"3rd. That whenever the owner and owners of the Wafford Ditch * * * and the owner and owners of water rights who are entitled to take water, not transferred by this decree, through and by means of the Craig-Beckham Ditch * * * and * * * the Titsworth Ditch * * * shall be unable to obtain at their respective headgates the supply and supplies of water to which they and each of them, are respectively entitled, said petitioner shall supply from and out of the water and water rights whose point and points of diversion are hereby changed, a sufficient quantity of water to make up such deficiency, so that all of said owners of water rights connected with said Wafford, Craig-Beckham and Titsworth ditches shall be fully supplied in accordance with their several rights as fixed by decrees of this Honorable Court, without requiring any owner or owners of water rights other than this petitioner to supply the same.

"4th. That as to the water of the Cottage Rock Ranch Ditch No. 28, and of the Aaron Ripley Ditch No. 37, and of the Hunt Ditch No. 175, and of the Lucas Ditch No. 266, and of Felch's West Side Ditch No. 349, and of the Felch Ditch No. 424, (hereinbefore fully described), the transfer thereof hereby adjudged and decreed is so adjudged and decreed only upon the express condition that no owner or owners of any now existing right or rights to the use of water from said Four Mile, or Oil Creek, or from any of its tributaries, shall ever be required to furnish water wherewith to supply any deficiency in the quantity of water to which petitioner is or shall be entitled in connection with all or any of said six ditches last hereinbefore named."

There was sufficient water in the stream so that no controversy arose as to interpretation of the decree or distribution of the water until the month of July, 1940, when water shortage occurred. On July 27 of that year, in answer to an appeal from the ruling of the water commissioner, the division engineer, C. W. Beach, wrote to the appealing ditch owners with reference to construction of the 1910 decree as follows:

"* * * As I understand the case now the question is whether the Park Center Ditch Company should turn out water senior in date to the water demanded by the Wafford, Craig-Beckham and Titsworth Ditches.

"In my opinion the ruling of the Court did not intend that the Wafford, Craig-Beckham and Titsworth Ditches should be supplied from rights senior to those owned by these ditches but intended that they be given a seniority over water of equal date, in the Park Center Ditch."

The owners of the lower ditches, being dissatisfied with the opinion of the division engineer, filed objection with the state engineer, who on August 10 wrote the division engineer Beach with reference to his interpretation of the decree as follows:

"It is my opinion that the terms of the transfer decree are clear and specific and are subject to but one con-

struction, viz., that the court granted the request of the transfers to the Park Center Ditch, conditioned upon the obligation of the Park Center Ditch to at all times leave sufficient water in Oil Creek out of the amount of water transferred by the court, to satisfy the appropriation of the Wafford and other ditches which protested the transfer in question.

"I, therefore, consider it is the duty of myself and Water Commissioner Jones to administer the transfer decree of the Park Center in conformity with this opinion until such time as the court shall determine otherwise."

Thereafter, defendant in error, the present owner of the Park Center ditch, brought this action against the state engineer, the division engineer, the water commissioner, and the individual defendants, who are the owners of water rights now diverted through the Titsworth, Craig-Beckham and Wafford ditches, alleging that the order of the state engineer was erroneous in that it required the delivery to defendants' ditches out of the priorities transferred to plaintiff's ditch of a quantity greatly in excess of that required by the 1910 decree; that since the tenth day of August, 1940, the subordinate water official had required plaintiff to supply out of its priorities and had permitted the defendant ditch owners to divert a quantity of water greatly in excess of that to which they would have been entitled under their decreed rights had the transfers never been made, and further alleging the wrongful distribution of excess water to defendant ditch owners, irreparable injury thereby and threat to continue the diversion of water contrary to the terms of the 1910 decree, with prayer for injunction against interference with the rights of plaintiff and its stockholders for the use of water by virtue of its priorities. After answers filed, the case was heard and the trial court entered judgment, the decretal part of which is as follows: "It is ordered, adjudged and decreed by the Court: That the order of the

State Engineer, M. C. Hinderlider, made and entered in the cause of date August 10th, 1940, be and the same is hereby rescinded, and the method of administering the decree of this Court of date May 11th, 1910, as ordered by the Division Engineer, C. W. Beach, and performed by Water Commissioner Jones prior to said order of August 10th, 1940, be and is hereby approved, and said Water Commissioner is ordered to administer said decree in conformity herewith." Plaintiffs in error here seek reversal of this decree.

In its amended complaint plaintiff prays only for injunction, as presupposing an undisputed title. But, as stated at page 1 in the brief of defendant in error, "The whole matter presented in this action in the Court below, and herein, is a question of law involving the construction of a decree of the District Court of Fremont County * * *." The judgment entered by the trial court merely attempts to direct the administration of the decree by the water officials as between the Park Center and the lower ditches whose owners are joined as defendants.

Had this action involved only plaintiff's right to injunction against defendants, the latter might have been the only necessary parties, but when it was tried as an action for construction of the 1910 decree and when the court considered the issue as one requiring it to direct the water officials in their administration of that decree, then all the parties to the proceeding resulting in the 1910 decree or their successors in interest became proper parties to this action, and, particularly in view of the provisions of the third and fourth conditions under which the change of point of diversion was granted, no complete construction of the 1910 decree or effective order for administration of the water thereunder could be made in their absence. Under the provisions of the third condition of the decree, the right of the Wafford ditch to call on the Park Center ditch for supply of water is inseparably connected with its right

to call on ditches other than the Park Center. However, no objection is made on the ground of defect of parties and no request for joining of parties appears in the record.

As above noted, this action was tried as a suit for construction of the 1910 decree. A decree is not woven of thin air; it is a determination of a specific issue presented to the court. It is grounded on the facts creating that issue; and, where construction is necessary, it must be construed in the light of the facts which gave it birth and limited by the issue it resolved. *Drach v. Isola*, 48 Colo. 134, 109 Pac. 748; *Arthur Irr. Co. v. Strayer*, 50 Colo. 371, 115 Pac. 724; *Wright v. Phillips*, 127 Ore. 420, 272 Pac. 554. Here the judgment roll was not offered, and no statement of the issues, and no part of the pleadings or evidence upon which the 1910 decree was based was before the trial court to advise it in the task of construction, or is before us now. Consequently, the court could only grope in the dark for aids in construing the decree.

Turning to the decree which we are here asked to reverse; it is fundamental that a decree should be complete and certain in itself. *Bell v. Otts*, 101 Ala. 186, 13 So. 43. "The general rule is that a judgment depends for validity upon its own terms, and extraneous documents can never be written into it by inference or reference." *Edwards v. Edwards*, 113 Colo. 390, 157 P. (2d) 616. While reference may be made to them in case of uncertainty or ambiguity for the purpose of construing the judgment, "The findings and opinion of the court are never the judgment of the court, but are only expressions as to what the court considers its judgment should be. The judgment must be definite and certain, comprehending clearly the relief sought and granted, and the final determination of the rights of the parties to the action." *Maroney v. Tannehill*, 90 Okla. 224, 215 Pac. 938. Without extraneous documents being written

in, this decree is without meaning. The administration is adjudged to be "as ordered by the division engineer, C. W. Beach, and performed by water commissioner Jones prior to said order of August 10th, 1940." The decree itself sets out neither the order by Beach, nor the method of performance by Jones. If we look to the record for clarification of the decree and as an aid in its interpretation, we find even there no order by Beach, but only a letter to certain ditch owners advising as to his opinion regarding one provision of the 1910 decree, and if by conjecture this letter is considered as the order to which reference is made, the opinion expressed in the letter would leave the third condition of transfer meaningless as between the Wafford and Park Center ditches and undetermined as to the other ditches. If we look to the evidence for assistance as to the method of administration performed by water commissioner Jones prior to August 10, 1940, it appears that no dispute arose until July, 1940, and no continued or recognized method of administration was in effect between then and August 10, 1940. The testimony of the water commissioner is so vague and uncertain that it only makes the confusion worse confounded. Since the decree of the trial court is so indefinite and obscure that its meaning cannot be ascertained either from its own language or by reference to the record, it is in effect no judgment. Again, no objection is raised on the ground of the uncertainty or insufficiency of the judgment, and, so far as plaintiffs in error are concerned, that point may be considered waived; but regardless of such waiver there is before us no final determination of any issue for this court either to affirm or reverse.

Accordingly, the cause is remanded for such further action as may be deemed advisable by the trial court and parties thereto.