SOUTH ADAMS COUNTY WATER AND SANITATION DISTRICT and the City and County of Denver, Acting By and Through its Board of Water Commissioners, Opposers–Appellants,

v.

The BROE LAND COMPANY, Applicant–Appellee,

and

Centennial Water and Sanitation District, the State Engineer, Colorado Division of Wildlife, Martha E. Fitzsimmons and the Fitzsimmons Ranch and Cattle Co., Upper South Platte Water Conservancy District, County of Park, Farmers Reservoir and Irrigation Company, Burlington Ditch, Reservoir and Land Company, City of Englewood, City of Thornton, City of Westminster, City of Aurora, Owens Brothers Concrete Co., Castle Meadows, Inc., Metropolitan Water Providers and the Consolidated Mutual Water Company, Opposers–Appellees.

No. 90SA264.

Supreme Court of Colorado, En Banc.

June 17, 1991.

Rehearing Denied July 9, 1991.

Moses, Wittemyer, Harrison and Wood-ruff, P.C., David M. Brown, James J. Du-bois, Boulder, for opposer-appellant South Adams County Water and Sanitation Dist.

Wayne D. Williams, Michael L. Walker, Casey S. Funk, Denver, for opposer-appel-lant City and County of Denver.

Holme Roberts and Owen, Raymond L. Petros, Jr., Richard A. Johnson, Dominic J. Ricotta, Denver, for applicant-appellee Broe Land Co.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timo-thy M. Tymkovich, Sol. Gen., Peter A. Fah-my, Asst. Atty. Gen., Denver, for opposers-appellees the State Engineer.

Hill & Robbins, P.C., David W. Robbins, Mark J. Wagner, Denver, for opposers-ap-pellees the Estate of Martha E. Fitzsim-mons and the Fitzsimmons Ranch and Cat-tle Co.

Grant, Bernard, Lyons & Gaddis, P.C., Jeffrey J. Kahn, Longmont, for opposers-appellees Upper South Platte Water Con-servancy Dist. and County of Park.

White & Jankowski, David F. Jankowski, Denver, for opposer-appellee City of Thorn-ton.

Justice ERICKSON delivered the Opinion of the Court.

In this change of use proceeding, the relative priorities of decreed water rights of the North Fork and the South Fork of the South Platte River are in issue. The Colorado Water Court, Division No. 1, en-tered a ruling and order (Case No. 84CW566, March 28, 1989) holding that the Park County District Court's adjudication, on May 22, 1913, of water rights located on the North Fork of the South Platte River was an original adjudication, and that wa-ter rights on the North Fork of the South Platte River should be administered accord-ing to their appropriation dates as against all other vested water rights on the South Platte River. The water court's ruling and order is now before us on appeal. We affirm.

## I

### A

On December 29, 1984, the BZH Land Company, now the Broe Land Company (Broe) filed an application to change the use of water rights from irrigation to mu-nicipal and industrial use. The water rights are located on Deer Creek, a tribu-tary of the North Fork of the South Platte

River (subject water rights).[1] These water rights were adjudicated for irrigation by the Park County District Court in Case No. 1678 on May 22, 1913 (1913 decree).

Broe's application also requested a "determination that the decree granted by the Park County District Court on May 22, 1913 for the [subject water rights] ... is an original adjudication and, therefore, the subject water rights should be administered with their true appropriation dates as against all other vested water rights." On February 18, 1988, South Adams County Water and Sanitation District, Mission Viejo Company, and Highlands Ranch Development Corporation (South Adams), objectors to the change of use application, relying on the postponement doctrine, filed a motion for partial summary judgment requesting that the district court enter an order finding that the 1913 adjudication was a supplemental adjudication in Water District 23, and that the water rights adjudicated therein are junior to those water rights decreed by the Park County District Court in Case No. 341 on October 18, 1889 (1889 decree). Broe consequently filed a cross-motion for summary judgment contending that notice of the 1889 adjudication was inadequate.[2]

B

In the late 1800s, the Colorado legislature realized that common-law procedures were inadequate to meet the needs of a water appropriation system based on the prior appropriation principle of first in time, first in right. *See Louden Irrigating Canal Co. v. Handy Ditch Co.*, 22 Colo. 102, 110–11, 43 P. 535, 538–39 (1895). The General Assembly established a system for settling the conflicting priorities to water rights through a process of adjudication and decree.[3] §§ 1762–1801, C.G.S. (1883). The adjudication process was designed to prioritize water rights within a water district according to their date of appropriation, and provided for both original and supplemental adjudications and decrees. *Id.*

> The court in making such decree, as aforesaid, shall number the several ditches and canals in the water district, concerning which adjudication is made, in consecutive order, according to priority of appropriation of water thereby made by the original construction thereof, as near as may be, having reference to the date of such decree as rendered....

Sec. 9, 1881 Colo.Sess.Laws 142, 149. In order to prioritize water rights that were adjudicated in separate decrees within the same water district, Colorado courts developed the postponement doctrine. The postponement doctrine provides that when a court enters a statutory decree in the same water district where a previous properly rendered statutory decree has been entered:

1. Specifically, Broe requested a change of use of the water rights originally decreed to the Nickerson Ditch No. 1, McDonald North Ditch and McDonald South Ditch, and the water rights transferred to these ditches from the Carruthers Ditch Nos. 1 and 2, and the Flume Ditch in Case No. W–7434.

2. On March 24, 1988, the Upper South Platte Water Conservancy District and the County of Park, Colorado filed an *amici curiae* brief requesting that the water court confirm the 1913 adjudication as the original adjudication for water rights on the North Fork. The Conservancy District and Park County subsequently filed a motion to intervene in the case on June 18, 1988, which was granted by the water court prior to commencement of oral argument on the cross motions for partial summary judgment. On July 5, 1988, the estate of Martha E. Fitzsimmons and the Fitzsimmons Ranch and Cattle Co., Inc., owners of North Fork water rights decreed in the 1913 adjudication, filed an *amici curiae* brief supporting Broe's cross motion for summary judgment.

3. One of the leading fundamental characteristics of this legislation is a provision for the appointment of a referee in each water district upon application by any party interested, and in case the judge cannot hear the evidence, it is made the duty of such referee to take testimony and present a decree to the district court determining the priorities to the use of water in the particular district in which he is acting. The referee, before proceeding to take testimony, is required to give notice by publication, and also by posting notices, of the time and place appointed for the taking of testimony. *Louden Irrigating Canal Co. v. Handy Ditch Co.*, 22 Colo. at 111, 43 P. at 539.

the decrees take rank and precedence in order of time of rendition: the doctrine being first in order of time, first in right of priority ... the earliest priority in the second proceeding, must be of a later date and number than the latest or lowest priority awarded in the first proceeding, and the earliest numbered priority in a second must be the next consecutive number after the latest numbered priority of the first proceeding.

*Huerfano Valley Ditch & Reservoir Co. v. Hinderlider,* 81 Colo. 468, 473, 256 P. 305, 307 (1927). Under the postponement doctrine, water rights adjudicated in a previous decree are senior to water rights adjudicated in a subsequent decree on the same stream, regardless of their dates of appropriation.

### C

In 1888, Water District 23 was created by Executive Order of the Governor pursuant to the authority of § 1757, C.G.S. (1883). As originally created, Water District 23 encompassed "[a]ll lands in the State of Colorado being, or to be, irrigated from ditches or canals taking water from the South Platte River, and from any of its direct or indirect tributaries at any point" above the confluence of the North and South Forks of the South Platte River. Sec. 9, 1889 Colo.Sess.Laws 210, 212. Water District 23 included drainage from the North, Middle, and South Forks of the South Platte River in the counties of Park, Jefferson, and Douglas (the Middle and South Forks are collectively referred to as the South Fork). The Kenosha Mountains separate the North Fork and its tributaries from the South Fork and its tributaries.[4]

In 1888, South Fork water users filed a petition in the Park County District Court requesting an adjudication of the water rights in Water District 23. The Park County District Court conducted an original adjudication and entered a decree on October 18, 1889, which set diversion priorities for 226 water rights in the South Fork

drainage, and two transbasin water right diversions from the crest of the North Fork drainage into the South Fork drainage.

Ten additional South Fork water rights were added to the 1889 priority list in seven supplemental decrees entered between 1889 and 1901. All of these decrees, including the original 1889 decree, were assigned Case No. 341. In 1905, a supplemental adjudication was held to determine the priority of three water rights diverted from Elk Creek, a tributary of the North Fork. Although the record indicates that adequate notice was posted in Water District 23, only the owners of the three water rights in Elk Creek participated in the adjudication.

In 1909, the Park County District Court was petitioned by the Kennedy–Thompson Ranch Co., a North Fork water user, for an adjudication of the water rights in Water District 23. The Kennedy–Thompson Ranch contended that as a North Fork water user, it had received inadequate notice of the 1889 and subsequent adjudications, and now wished to have its water rights adjudicated. The district court appointed a referee who took evidence and heard oral arguments. The referee submitted his report to the district court, which entered it as a decree dated May 22, 1913.

The 1913 decree encompassed ninety water rights on the North Fork, and forty-six on the South Fork, and established four distinct schedules of priority for these adjudicated water rights. Under the caption "NAMES OF DITCHES LOCATED ON THE NORTH FORK DRAINAGE OF THE SOUTH PLATTE RIVER, BEFORE THE REFEREE FOR ADJUDICATION IN THIS PROCEEDING. WITH DRAINAGE PRIORITY NUMBERS, ONE TO NINETY," the decree separately prioritizes the ninety North Fork water rights in order of date of appropriation. Under the caption "NAMES OF DITCHES LOCATED ON THE SOUTH FORK DRAINAGE OF THE SOUTH PLATTE RIVER, BEFORE THE

---

**4.** In 1969, the North Fork drainage was removed from Water District 23 and made a part of newly created Water District 80.

REFEREE FOR ADJUDICATION IN THIS PROCEEDING, FORTY SIX (46) IN NUMBER," the decree separately lists the forty-six South Fork water rights in order of their dates of appropriation.[5] The decree also records both the North Fork and South Fork water rights numbered 1 to 136 in order of their dates of appropriation. Finally, the decree records both the North Fork and South Fork water rights in order of their dates of appropriation and assigns a "Priority No. in Dist." beginning with number 237, the most senior water right, and ending with priority number 372 assigned to the most junior water right.[6] The fourth list also assigns corresponding ditch numbers beginning with 222 and ending with 357.

The water court held four days of hearings on the issue of whether the 1913 adjudication should be treated as an original adjudication for purposes of the North Fork, and whether the subject water rights should be administered according to their appropriation dates. At the end of a two-day hearing, the water court denied Broe's cross motion for partial summary judgment and granted in part and denied in part South Adams' motion for partial summary judgment.

The water court determined that the relationship between the 1889 and 1913 decrees was unclear, that the 1913 decree was ambiguous with regard to the priorities established for the North Fork water rights within Water District 23, and concluded that the water court was required to consider the surrounding facts and circumstances in evidence in order to properly interpret the 1913 decree.[7] *Hinderlider v. Canon Heights Irrigation & Reservoir Co.*, 117 Colo. 183, 185 P.2d 325 (1947); *Hassler v. Fountain Mutual Irrigation Co.*, 93 Colo. 246, 26 P.2d 102 (1933); *Drach v. Isola*, 48 Colo. 134, 109 P. 748 (1910). Accordingly, the water court conducted a two-day hearing and examined documentary evidence concerning the 1889 and 1913 decrees, and heard testimony pertaining to the historical administrative interpretation of the decrees and state water officials' historical practice concerning North Fork water rights adjudicated in 1913. The water court also took evidence on the issues of estoppel, laches, and the statute of limitations. At the close of trial, the water court issued a ruling and order concluding that the Park County District Court intended the 1913 decree to be an original adjudication for the water rights located on the North Fork and not a supplemental adjudication of the 1889 decree, and that the subject water rights should be administered according to their appropriation dates.[8]

## II

When reviewing an order and ruling of the water court based on documentary

---

5. The decree also lists the eleven reservoirs and inlet and outlet ditches that were before the referee for adjudication.

6. The most senior water right was assigned priority number 237 since the previous nine adjudications in Water District 23 had already assigned priority numbers to 236 water rights.

7. The referee for the 1913 adjudication assigned both North Fork drainage priority numbers, based on date of appropriation, and district-wide priority numbers, based on date of adjudication, to the ninety North Fork water users participating in the adjudication. The 1913 decree is ambiguous because it fails to precisely state whether the North Fork rights should be administered according to their dates of appropriation or whether they should be administered according to their district-wide priority numbers.

8. In June 1989, the water court resumed hearings on Broe's application for a change of use to determine the quantification of the transferable consumptive use from the subject water rights, and the effect on other water users of the proposed changes of use and alternate points of diversion. After taking evidence on these issues, the water court entered a tentative ruling dismissing Broe's application because it was speculative and contrary to public policy, and because the water court could not determine whether injury to other water rights would occur since Broe could not identify how or where the water would actually be used. The water court nonetheless continued the matter without immediately entering the dismissal order to allow Broe the opportunity to amend the application to overcome its deficiencies. On May 31, 1990, Broe filed an amended application. The amended application is still pending before the water court.

and testimonial evidence, "[o]ur task is to review the record with the sole purpose of ascertaining whether any prejudicial error as to the law has been committed, and whether the findings and judgment entered by the lower court are supported by substantial evidence or not." *Hassler v. Fountain Mutual Irrigation Co.*, 93 Colo. at 247, 26 P.2d at 103; *see also Peterson v. Ground Water Comm'ns*, 195 Colo. 508, 516, 579 P.2d 629, 634–35 (1978).

### A

South Adams asserts on appeal that the postponement doctrine was well established when the 1913 decree was issued. Therefore, South Adams contends that we must assume that the referee understood and intended to correctly apply the postponement doctrine to the subject water rights in the 1913 decree. South Adams claims the water court erred in ruling that the 1913 adjudication was an original adjudication of North Fork water rights. After reviewing the 1913 decree and the transcripts of the 1913 adjudication hearings, the water judge concluded that he was unable to determine whether the referee properly considered and applied the postponement doctrine against the North Fork water users.

South Adams relies on *Fort Lyon Canal Co. v. Arkansas Valley Sugar Beet and Irrigated Land Co.*, 39 Colo. 332, 90 P. 1023 (1907); *Farmers' Union Ditch Co. v. Rio Grande Canal Co.*, 37 Colo. 512, 86 P. 1042 (1906); *Crippen v. X.Y. Irrigation Ditch Co.*, 32 Colo. 447, 76 P. 794 (1904), and *Louden Irrigating Canal Co. v. Handy Ditch Co.*, 22 Colo. at 102, 43 P. at

535, to support its claim that the postponement doctrine was well settled law by the time of the 1913 adjudication. Although these cases do indicate the emergence of the postponement doctrine by as early as 1913, they are limited to instances when all the claimants appropriated water from the same stream.

▮ The 1879 Irrigation Act, § 1762, C.G.S. (1883), provides a district court with jurisdiction within each water district for the purpose of "hearing, adjudicating and settling all questions concerning the priority of appropriation of water between ditch companies and other owners of ditches drawing water for irrigation purposes from *the same stream or its tributaries* within the same water district." (Emphasis added.) *See also Fort Lyon Canal Co. v. Arkansas Valley Sugar Beet & Irrigated Land Co.*, 39 Colo. at 344, 90 P. at 1027 ("The irrigation statutes [of 1879 and 1881] are public, and apply to all persons taking water from the same source."); *Platte Water Co. v. Northern Colo. Irrigation Co.*, 12 Colo. 525, 529, 21 P. 711, 712 (1889) ("The irrigation acts of 1879 and 1881 were intended as a system of procedure for determining the priority of rights to the use of water for irrigation between the owners of ditches, canals and reservoirs taking water from the same natural stream.").[9] Thus, although the postponement doctrine may have existed at the time of the 1913 adjudication, the referee was not required to apply the doctrine to both the South Fork and the North Fork water rights since they were distinct and separate drainage basins.[10]

---

**9.** The 1943 Irrigation Act provides a district court with undisputed authority to independently adjudicate separate streams within the same water district.

> [A]nd provided further, that where there are two or more entirely distinct sources of water in any water district, the court having jurisdiction thereof may permit separate adjudication proceedings for each source.... As used herein, "district sources of water" shall mean two or more natural stream systems or other sources of water in any water district which do not join within the boundaries of such water district. In case of such distinct sources of water, each source may be considered as though it constituted a separate

> water district for all purposes of adjudication and transfer of suits, including the giving of notice in such suits.

§ 189(2), C.S.A. (1952 Supp.). Although the 1943 Irrigation Act is not controlling on the 1913 decree, it does provide guidance on the proper interpretation to be given the 1879 Irrigation Act.

**10.** In determining the intent of the 1913 decree, the water court found that although the 1889 adjudication was valid and in compliance with the statutory requirements for notice, no practical steps were taken to give notice of the adjudication to the over sixty North Fork water right holders. In light of the district court's

South Adams' contention that the referee did in fact intend to apply the postponement doctrine to the North Fork water users is based on excerpted statements from the partial transcript of the hearing before the referee in the 1913 adjudication. Although some of the statements of the referee and the parties to the 1913 decree excerpted by South Adams do indicate the referee's understanding of the postponement doctrine, they are insufficient to support the conclusion that the referee, and consequently the district court, intended to apply the postponement doctrine to the adjudication of North Fork water rights. The partial transcript relied upon by South Adams primarily concerns the priority to be given reservoirs located in the South Fork drainage, and does not at any point expressly state the intent of the referee to actually apply the postponement doctrine to either the South Fork or the North Fork.

### B

After reviewing the 1913 decree and the underlying record, the water court concluded that, rather than intending to apply the postponement doctrine to the North Fork water rights, the district court intended to give the North Fork interests equal standing to the South Fork interests in terms of priority. The 1913 decree explicitly states that

> the waters of the North Fork and the waters of the South Fork, of the South Platte River, are separated by a high mountain range; therefore, there is not, and can not be, any conflict of right between the users of the water of the North Fork and South Fork of said South Platte River.[11]

In addition to assigning separate drainage priority numbers to the North Fork water rights, the decree also stated:

Your referee has given Ditch and Priority–Number series on individual streams, in this proceeding, only as to the North Fork Drainage of the South Platte River, for the reason that it would be impracticable so to do, by reason of former adjudications, as to the South Fork Drainage.

■■■ South Adams contends that these statements in the 1913 decree were intended to facilitate the administration of the North and South Fork water rights in relation to division-wide water rights outside of Water District 23. We are unpersuaded by the argument. Water users outside of Water District 23 had no standing to participate in the 1913 adjudication, and although the district court could have considered the interests of downstream users, it was not required to do so. §§ 1796 and 1797 C.G.S. (1883); *Fort Lyon Canal Co. v. Arkansas Valley Sugar Beet and Irrigated Land Co.*, 39 Colo. at 332, 90 P. at 1023.

■■■ Because the North and South Forks are separated by a high mountain range, there can be no conflict of right between the North and South Fork users, and therefore it would be improper to treat the 1913 adjudication of the North Fork water rights as supplemental to previous adjudications of South Fork water rights. Similarly, the district court was able to assign ditch and priority numbers on individual streams to the North Fork drainage, and not to the South Fork drainage because it believed that, unlike the South Fork, none of the previous adjudications had prejudiced the rights of the North Fork water users.

### C

■■■ In formulating its interpretation of the 1913 decree, the water court heard testimony relating to the State Water Engineers' Administration of the 1889 and 1913

---

privilege to establish separate drainage priorities for natural stream systems that do not join within the boundaries of their respective water district, it was unnecessary for the water court to make findings concerning the sufficiency of notice for the 1889 adjudication. Similarly, findings with regard to the adequacy of notice for the 1905 adjudication would have been unnecessary.

11. The two-river language was adopted from a brief submitted by an attorney for a North Fork water user, and also appeared in 1918 and 1922 decrees issued by the Park County District Court.

decrees. From approximately 1920 to the present, Colorado state water officials have consistently interpreted the 1889 decree as not adjudicating water rights located on the North Fork, and have consistently administered the North Fork rights adjudicated in 1913 as having been adjudicated in an original proceeding, so that their priority dates are their dates of appropriation. The water court also considered the fact that the water rights tabulations prepared by the Division Engineer's Office, Water Division No. 1, from 1981 to the present, prioritize North Fork water rights based on their dates of appropriation.

Based on this testimony, the water court concluded that the administrative practice of treating the 1913 adjudication as an original adjudication for purposes of the North Fork was reasonable and within the administrative expertise of the State Engineer and Division Engineer, and was therefore entitled to deference by the court. The water court also noted that water users from downstream water districts acquiesced in the state water officials' practical construction given to the 1889 and 1913 decrees.

South Adams contends that the water court unnecessarily considered the historical administration of the 1889 and 1913 decrees by the State and Division Water Engineers because the intent of the decree's drafters is unambiguous from both the language of the decree and the underlying record of the adjudication. *Orchard City Irrigation District v. Whitten*, 146 Colo. 127, 361 P.2d 130 (1961) (when construction of a decree is necessary, it must first be construed in the light of its underlying record); *Hinderlider v. Canon Heights Irrigation & Reservoir Co.*, 117 Colo. at 183, 185 P.2d at 325 (same). Section II A of this opinion points out that an examination of the underlying record of the 1913 adjudication does not reveal the unambiguous intent of the referee or the district court.

██ When the meaning of a decree is ambiguous, and the court cannot determine its meaning from the underlying record, the court may look to the administrative interpretation of the decree by officials charged with the administration of that decree. *Luis Coppa & Son v. Kuiper*, 171 Colo. 315, 322–23, 467 P.2d 273, 277 (1970); *McLean v. Farmers' Highline Canal & Reservoir Co.*, 44 Colo. 184, 98 P. 16 (1908); *see also Ingram v. Cooper*, 698 P.2d 1314, 1316 (Colo.1985) (contemporaneous construction of legislation by agency charged with its enforcement, though not controlling, is to be given deference by courts when interpreting a statute); *Davis v. Conour*, 178 Colo. 376, 497 P.2d 1015 (1972) (same); *Hassler v. Fountain Mutual Irrigation Co.*, 93 Colo. at 246, 26 P.2d at 102. The water court thus properly considered the more than seventy years of consistent administration by state water officials of the North Fork water rights according to their date of appropriation.

██ Accordingly, we affirm the order and ruling of the water court holding that the 1913 decree was an original adjudication of water rights located on the North Fork of the South Platte River, and that water rights on the North Fork of the South Platte River should be administered according to their appropriation dates as against all other vested water rights.