Cordia **BOOTH, James Stamper, Eugene Copeland, and Bill King, on behalf of the proposed Thurgood Marshall Charter Middle School, Plaintiffs–Appellees,**

and

**The Colorado State Board of Education, Intervenor–Appellee and Cross–Appellant,**

v.

The **BOARD OF EDUCATION OF SCHOOL DISTRICT NO. 1 IN THE CITY AND COUNTY OF DENVER, and Thomas M. Mauro, Sharon R. Bailey, Lynn D. Coleman, Aaron M. Gray, J.P. Hemming, Carole R. McCotter, and Marcia M. Johnson in their official capacities as members of the Board of Education, Defendants–Appellants and Cross–Appellees,**

and

**Sharon Eastlund, Intervenor–Appellant and Cross–Appellee.**

No. 96CA0348.

Colorado Court of Appeals, Div. II.

April 17, 1997.

As Modified on Denial of Rehearing July 10, 1997.

Certiorari Granted Feb. 2, 1998.

___

Rothgerber, Appel, Powers & Johnson, Gregory B. Kanan, Parcel, Mauro, Hultin & Spaanstra, P.C., Gwen J. Young, Susan J. Keller, DiManna & Jackson, Daniel A. Sweetser, Denver, for Plaintiffs–Appellees.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, William E. Thro, Assistant Attorney General, Denver, for Intervenor–Appellee and Cross–Appellant.

Semple & Mooney, P.C., Patrick B. Mooney, Michael H. Jackson, Denver, for Defendants–Appellants and Cross–Appellees.

Collins & Pringle, Dwight L. Pringle, Denver, for Intervenor–Appellant and Cross–Appellee.

Miller, DeLay & Crabb, P.C., Kenneth A. DeLay, Christopher E. Gdowski, Westmin-

ster, Amicus Curiae for School District No. 12 in the County of Adams.

James W. Griffin, Lakewood, Amicus Curiae for the Colorado League of Charter Schools.

Opinion by Judge CRISWELL.

Plaintiffs were applicants for a charter for the proposed Thurgood Marshall Charter Middle School (Charter School) pursuant to the Charter Schools Act (the Act), § 22–30.5–101, et seq., C.R.S. (1995 Repl.Vol. 9). They instituted this action against the Board of Education of School District No. 1 in the City and County of Denver (Denver Board), seeking judicial enforcement of an order entered by the Colorado State Board of Education (State Board). The trial court, after allowing intervention both by the State Board and by Sharon Eastlund, a Denver taxpayer, entered its judgment enforcing the State Board's order. Both the Denver Board and the intervening taxpayer appeal, and the State Board cross-appeals. We reverse.

In late 1993, plaintiffs submitted an application to the Denver Board to establish the Charter School for the 1994–1995 school year. The Denver Board denied the application, and plaintiffs appealed that denial to the State Board. The State Board remanded the application to the Denver Board with instructions to reconsider certain disputed issues relating to the site to be used by the Charter School, the facilities to be provided by the Denver Board, the costs to be paid by the Charter School, and the revenues to be provided to it. All these issues were required to be resolved before the Charter School could become operational.

Thereafter, plaintiffs and the Denver Board entered into discussions upon all these subjects, but they were unable to agree upon any of them. Hence, the Denver Board adopted a resolution again denying the revised application for the Charter School.

The applicants again appealed to the State Board. A public hearing was held by that tribunal, at the end of which it adopted the following motion:

[We] find that the decision of the local board was contrary to the best interest of the pupils, the school district or community and [we] order *the establishment* of the Thurgood Marshall Middle Charter School.

Having ordered the establishment of the Thurgood Marshall Middle School, this Board has a responsibility for ensuring that its order is carried out for the 1995–96 school year. At the same time, the Board is mindful and respectful of the local board's responsibilities. In similar situations, courts require status reports. The Board believes this to be appropriate in this situation. Therefore, the parties are jointly directed *to submit a status report outlining their progress with respect to budget, site, enrollment, and employment on or before December 1, 1994.* (emphasis supplied)

Following the public hearing, the staff of the State Board prepared a written decision which was signed by the members of the State Board some time after the public hearing was adjourned. However, the wording of the written decision modified the motion adopted at the meeting by requiring that the Denver Board "approve the charter" for the Charter School, rather than merely ordering the "establishment" of that school. In all other respects, this written order repeated the provisions of the motion adopted at the hearing.

In late February 1995, after the failure of further negotiations between plaintiffs and the Denver Board, plaintiffs instituted this action, in which they sought a writ of mandamus to require the Denver Board to grant a charter consistent with the terms of their amended application. The Denver Board counterclaimed challenging the enforceability of the State Board's order as well as the constitutional validity of the Act itself. The State Board, acting as an intervening defendant, responded to those counterclaims.

The district court granted a preliminary injunction, concluding that there were no substantial differences between the State Board's initial motion and its later written order and determining that its order complied with the terms of the Act and that the Act was constitutional.

Later, the district court issued a permanent injunction that required the Denver Board to "grant the charter to the Thurgood Marshall Charter Middle School in the *basic form* of the application as it was submitted in July 1994." (emphasis supplied) However, on motion of the State Board, that order was amended to read: "[T]he Denver School Board must obey the Order of the State Board of Education and grant the 'Charter for the Thurgood Marshall Charter Middle School."

The Act at issue here was adopted in 1993. Colo. Sess. Laws 1993, ch. 227 at 1051–1061. By its express terms, it will remain in effect only until July 1, 1998, when it will be repealed. Section 22–30.5–114, C.R.S. (1996 Cum.Supp.). We note that, more recently, the Act has been amended, Colo. Sess. Laws 1996, ch. 140, at 667–668, and the creation of charter school districts has been authorized. Colo. Sess. Laws 1996, ch. 140, at 663–667. However, neither of these later enactments is applicable to this controversy, and we do not consider their effect here. In addition, the Sixty-First General Assembly has adopted, and the Governor has signed, Senate Bill 97-018, but that legislation will not become effective until August 6, 1997.

Under the Act, a' charter school is "a public, nonsectarian, nonreligious, non-home-based school which operates within a school district." Section 22–30.5–104(1), C.R.S. (1995 Repl.Vol. 9). Once established, the charter school exercises a considerable degree of self-autonomy. Hence, it is to be "administered and governed by a governing body in a manner agreed to by the charter school applicant and the local board of education." Section 22–30.5–104(4), C.R.S. (1995 Repl.Vol. 9). In addition, "pursuant to contract," the charter school may operate free from any local school district policy or state regulation. And, any charter school is to be responsible for its "own operation including, but not limited to, preparation of a budget, contracting for services, and personnel matters." Section 22–30.5–104(7)(a), C.R.S. (1995 Repl.Vol. 9).

For purposes of the Public School Finance Act of 1994, § 22–54–101, et seq., C.R.S. (1995 Repl.Vol. 9), pupils enrolled in the charter school are to be included in the public enrollment of the school district in which the charter school is situate. Section 22–30.5–112(1), C.R.S. (1995 Repl.Vol. 9). The charter school and the school district are to agree upon the funding and services to be provided by the district to the charter school. Section 22–30.5–112(2), C.R.S. (1995 Repl.Vol. 9).

To establish a charter school, an application, which shall be a "proposed agreement," must be submitted to the local board of education. Section 22–30.5–106(1), C.R.S. (1995 Repl.Vol. 9). This application must contain numerous items including a mission statement, a description of the goals, objectives, and pupil standards to be achieved, a description of the school's educational program and curriculum, a plan for evaluating pupil performance and progress, and a demonstration of the need and support for the establishment of the school. Sections 22–30.5–106(1)(a) through 22–30.5–106(1)(f), C.R.S. (1995 Repl.Vol. 9).

In addition, the application must provide:

Evidence that the plan for the charter school is economically sound for both the charter school and the school district, a proposed budget for the term of the charter, a description of the manner in which an annual audit of the financial and administrative operations of the charter school, including any services provided by the school district, is to be conducted, and a plan for displacement of pupils, teachers, and other employees who will not attend or be employed in the charter school.

Section 22–30.5–106(1)(g), C.R.S. (1995 Repl. Vol. 9).

The local board must hold a public hearing and take action upon the application within 60 days. Section 22–30.5–107(2), C.R.S. (1995 Repl.Vol. 9). If the application is approved, it:

shall constitute an agreement, and the terms thereof shall be the terms of a contract between the charter school and the local board of education.

Section 22–30.5–105(1), C.R.S. (1995 Repl. Vol. 9).

If a charter application is denied, the charter applicant may appeal to the State Board, § 22–30.5–107(3), C.R.S. (1995 Repl.Vol. 9), or the State Board may, upon its own motion, review the local board's decision. Section 22–30.5–108(1), C.R.S. (1995 Repl.Vol. 9).

Upon such an appeal or review, if the State Board determines that the local board's decision "was contrary to the best interests of the pupils, school district, or community," it must remand "such decision" to the local board for its reconsideration, pursuant to written instructions from the State Board. Such instructions must include "specific recommendations concerning the matter requiring reconsideration." Section 22–30.5–108(3)(a), C.R.S. (1995 Repl.Vol. 9).

Within 30 days after such remand, the local board must reconsider the application and "make a final decision." Section 22–30.5–108(3)(b), C.R.S. (1995 Repl.Vol. 9). If that decision is again to deny the application, a second appeal may be taken to the State Board. This time, if the State Board determines that the local decision was contrary to the interests of any of the relevant groups:

> the state board *shall* remand such final decision to the local board *with instructions to approve the charter application.* The decision of the state board shall be final and not subject to appeal.

Section 22–30.5–108(3)(d), C.R.S. (1995 Repl. Vol. 9) (emphasis supplied).

## I.

All of the parties here are in substantial agreement respecting the authority of the State Board under the Act upon a second appeal to it. All agree that the State Board possesses the authority to require the local board "to approve the charter application," *i.e.,* to require approval of all of the terms and conditions set forth in the application presented to the State Board. Further, with the exception of plaintiffs, all parties, including the State Board, agree that the State Board's decision here (whether represented by the motion adopted at the time of the hearing or the later written order) attempted to mandate the approval of the charter application, in principle, but also to require the parties to engage in further negotiations over

certain "details" and to report to the State Board upon the "progress" of these future negotiations. The subjects of such discussions were to be "budget, site, enrollment, and employment."

■ There is disagreement, however, as to whether, on a second appeal under § 22–30.5–108(3)(d), the State Board may do anything other than to order approval of the specific application pending before it. The Denver Board and the taxpayer insist that it has no other authority. The State Board argues that, because it could order approval of the specific application, it necessarily possesses the right not to exercise its full authority and to order the parties to continue to negotiate over the "details." Given the specific provisions of the Act, we agree with the Denver Board and the taxpayer.

A review of the Act discloses that all of its requirements looking toward a "final decision" by the State Board are an homage to expedition. A local board must render its initial decision upon a charter school application within 60 days of its filing; any appeal from that decision must be filed within 60 days; within an additional 60 days, the State Board must render its initial decision and remand the cause to the local board, which must act within 30 days, and the State Board must render its "final decision" within 30 days. To suggest that, at the end of this process, the State Board may order the parties simply to discuss the matter some more would be completely inconsistent with the Act's evident purpose of obtaining a final determination with respect to a charter school application on a highly expedited basis.

Further, an approved charter application becomes a "contract" between the charter school and the local board. If, as here, the parties have been unable to agree upon all of the terms and provisions necessary to allow the charter school to become operational, the State Board, through its order requiring approval of the application, resolves any such disagreements.

Finally, the Act requires the State Board, upon a second appeal, to render a "final" decision. Yet, if an order for further negoti-

ations is entered on a second appeal and if, as here, the parties do not reach agreement upon the matters still in dispute, there can be no "final" order without yet another appeal to the State Board. There is nothing in the Act, however, that would authorize any such additional proceeding.

Under this specific statutory scheme, therefore, we conclude that the State Board has no authority upon a second appeal merely to approve a charter application, in principle, leaving it to the parties to negotiate upon any subject still in dispute. To the contrary, on the second appeal, the State Board is required to determine whether the local board's decision in denying the application was contrary to the best interests of the pupils, school district, or community. If so, it has no authority, assuming the application meets the requirements of the Act, other than to require the local board to "approve the charter application." Section 22–30.5–108(3)(d).

Because the approved application becomes a contract between the local board and the charter school, nothing we say here should be deemed to mean that the parties may not *voluntarily* agree to amendments to an application previously ordered approved by the State Board—that issue is not before us. Instead, we conclude only that, upon a second appeal, the State Board, if it deems the local board's denial of the application to have been contrary to the interests of the described groups, must approve the application as presented to it, thereby necessarily resolving any disputed issues consistent with the position stated in the application.

■ As we have noted, the Denver Board, the State Board, and the taxpayer all agree that the State Board's order here did *not* approve the specific terms of the Charter School's application, but approved it only in principle, while intending that there be further negotiations on matters remaining in dispute. In contrast, plaintiffs argue that the State Board's order approved the whole of the Charter School's application and that the trial court found, as a fact, that this was the intent of its order. We agree with the former view of the order.

The interpretation of an administrative order is a question of law for the court, not a question of fact. Further, if an administrative decree is ambiguous, a court "may look to the administrative interpretation of the decree by officials charged with the administration of that decree." *South Adams County Water & Sanitation District v. Broe Land Co.*, 812 P.2d 1161, 1168 (Colo.1991).

Here, whether the focus is upon the motion adopted by the State Board at the time of the hearing or upon the written order later signed by its members, an ambiguity is apparent. If the State Board intended to approve the Charter School's application in all of its details, there was no purpose in requiring "status reports" upon the parties' "progress" with respect to the four subjects upon which the parties were still in disagreement.

While the position of the State Board in the trial court as to the nature of its order was not entirely clear, before us it says that it did not intend to approve the application *in toto;* it intended for the parties to continue to negotiate. Testimony from the State Board's secretary confirms this construction of the order, and there is no controverting evidence. This construction of the order is entitled to some deference. *See South Adams County Water & Sanitation District, supra.*

Finally, the trial court initially required only that the Denver Board approve the charter application in its "basic form." The court did not compel the approval of all of the details contained within the charter application as it existed at the time of the State Board's action.

We conclude, therefore, that, consistent with the construction placed upon its own order by the State Board, the administrative order at issue here did not mandate approval of the charter application, as required by § 22–30.5–108(3)(d). Rather, it purported to require the parties to undertake actions which it had no authority to direct. Hence, the State Board exceeded its statutory powers in issuing that order. *See Flavell v. Department of Welfare,* 144 Colo. 203, 355 P.2d 941 (1960); *O'Neill v. Department of Revenue,* 765 P.2d 590 (Colo.App.1988.)

Further, we cannot simply treat the Board's improper directions to the parties as surplusage that may be disregarded. The subjects of dispute between the parties did not relate only to "details"; the nature of their disagreements related to matters that would prevent the Charter School from becoming operational until they were resolved.

Nor may we conclude that the State Board, had it been aware of the limitations imposed upon it by § 22–30.5–108(3)(d), would have directed the approval of all of the specifics contained within the application that was pending before it. On the contrary, the details contained within a specific application may well affect the State Board's decision upon the question whether a local board's denial of that application "was contrary to the best interests of the pupils, school district, or community." *See* § 22–30.5–108(3)(a). Because the State Board here admittedly did not order adoption of all of the present application's proposals, we are reluctant to decree that, in other circumstances, it would have done so.

■ We recognize that the State Board's order is "final and not subject to review," § 22–30.5–108(3)(d), and that such order is, therefore, not subject to the judicial review procedures of the Colorado Administrative Procedures Act, § 24–4–106, C.R.S. (1988 Repl.Vol. 10A). Nevertheless, because we have accepted that portion of the Denver Board's counterclaim that asserts that the order is not enforceable, we can direct appropriate relief under that counterclaim, whether such relief has been requested or not. C.R.C.P. 54(c). *See Rice v. Hilty,* 38 Colo. App. 338, 559 P.2d 725 (1976).

Given the circumstances here, it would be appropriate to direct the State Board to reconsider its order in light of the views set forth in this opinion and to issue a new order in its stead. Given the time which has passed, moreover, the State Board should be given the discretion to allow further presentations by the parties should it determine it appropriate to do so. We shall, therefore, remand the cause to the trial court for the entry of a decree to this effect.

## II.

Having reached the conclusion that the pertinent order is unenforceable for the reasons described above, we need not consider whether the members of the State Board violated the Open Meetings Act, § 24–6–402, C.R.S. (1996 Cum.Supp.), by signing the written order after the hearing had adjourned.

■ Likewise, because the parties are not subject to any mandatory administrative order, we conclude that the constitutional issues raised by the taxpayer and Denver Board are not now ripe for determination. *See Mt. Emmons Mining Co. v. Town of Crested Butte,* 690 P.2d 231, 240 (Colo.1984) ("These standards of constitutional adjudication point up what is fundamentally nothing more than sound jurisprudence—to withhold decision on the validity of a legislative enactment until such time as the issues are solidly fixed by an evidentiary record that will permit a final resolution of the controversy."); *Colorado Department of Revenue v. District Court,* 172 Colo. 144, 149, 470 P.2d 864, 867 (1970) ("If [an agency's] action results in the deprivation of constitutional rights of the persons affected by it, the action is subject to judicial review. Until the agency acts, action of the judiciary is premature.")

The injunctive decree entered by the district court is reversed, and the cause is remanded to that court for the entry of a decree of the nature described in this opinion.

MARQUEZ and ROTHENBERG, JJ., concur.